IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 19, 2008 Session

**AUDREY L. LINKOUS, on her own behalf, and on behalf of and as surviving spouse of CHARLES G. LINKOUS, deceased, and by next friend on behalf of her minor children, JUSTIN L. LINKOUS, and HEATHER M. LINKOUS, v. HAWKINS COUNTY DEPUTY DANIEL LANE, HAWKINS COUNTY DEPUTY BRIAN BOGGS, HAWKINS COUNTY JAILER KIMBERLY GIBSON a/k/a KIMBERLY COOK, HAWKINS COUNTY JAILER NATHAN SIMPSON, HAWKINS COUNTY JAIL SUPERVISOR SCOTT ALLEY, HAWKINS COUNTY SHERIFF WARREN D. RIMER, and HAWKINS COUNTY, TENNESSEE**

Direct Appeal from the Circuit Court for Hawkins County
No. 05CV00462     Hon. Tom Wright, Circuit Judge

No. E2007-01054-COA-R3-CV  - FILED MAY 14, 2008

This wrongful death action was brought by the widow of deceased, who committed suicide in the county jail. The Trial Court granted summary judgment to defendant County on the grounds that the undisputed evidence established that the defendant's suicide was not foreseeable. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., concurred, and SHARON G. LEE, J., concurred in part and dissented in part.

Richard A. Spivey, Kingsport, Tennessee, for appellants.

Russell W. Adkins and Steven C. Uret, Kingsport, Tennessee, for appellee, Hawkins County, Tennessee.

**OPINION**

In this wrongful death action, the plaintiff widow sued defendant County for the wrongful death of her husband who committed suicide in the County Jail.

The Complaint alleged that the deceased was arrested by Hawkins County deputies for public intoxication and violation of the Tennessee Drug Control Act on August 16, 2004 and was taken to the Hawkins County jail for booking and processing. The Complaint alleged that the Hawkins County jailers and deputies knew that he was severely intoxicated, and placed him in the jail's visitation booth, rather than in the "drunk tank". The Complaint further averred that the visitation booth was equipped with a telephone/intercom and a telephone cord which the deceased used to hang himself in the early morning of August 17, 2004, and that the negligence of the deputies and jailers was the proximate cause of his death.

Subsequently, Hawkins County filed an answer setting forth affirmative defenses including: the act of the deceased of purposely hanging himself was the sole, direct and proximate cause of his death; the deceased was more than 50% at fault when he hung himself resulting in his death; the deceased's act of purposely hanging himself was an independent, intervening cause; and the facts alleged in the Complaint fell within the discretionary function exception to the Governmental Tort Liability Act. Finally, the County denied that the deputies or jailers were aware that the deceased was at substantial risk of suicide, denied all allegations of negligence and denied liability under any theory for the death of the deceased.

The County filed a Motion for Summary Judgment supported by affidavits of four employees of the Hawkins County Sheriff's department, and argued that the County personnel had not departed from the applicable standards of care and were not negligent in the resulting death of decedent, and that the acts set forth in the Complaint fell within the discretionary function exception to the GTLA.

The Statement of Undisputed Material Facts filed with the motion set forth the material facts as provided in the affidavits of Deputies Daniel Lane and Brian Boggs, who arrested the deceased, and jailers Kimberly Gibson and Nathan Simpson, who booked the deceased and supervised him while he was detained in the jail. The facts set forth in support of the Motion are summarized as follows:

1. On August 16, 2004, Charles Gregory Linkous was arrested for public intoxication and violation of the Tennessee Drug Control Act.

2. Mr. Linkous was transported to the Hawkins County Jail for booking.

3. Deputy Kimberly Gibson booked Mr. Linkous into the jail on August 17, 2004 at about 9:40 p.m.

4.      Mr. Linkous was intoxicated.  Deputy Gibson specifically asked him if had suicidal thoughts and he denied the same.  In response to other health related questions, he related that he was prescribed Dilantin for seizures but that he had not been taking the drug.

5.      At the time Mr. Linkous was booked into the jail, the only drunk tank at the jail was occupied by a prisoner who was dangerous to others.  For the safety of Mr. Linkous, he was not housed in the drunk tank with the dangerous prisoner or with the general jail population.   Mr. Linkous was placed in a visitor's booth, which is approximately 6' by 6', has tables and two telephones.  The visitors booth is near the booking room.

6.      Mr. Linkous was observed approximately every thirty minutes while he was in the visitors' booth.  Deputy Nathan last observed him at 1:35 a.m. and Deputy Gibson last saw him alive at approximately 2:00 a.m.  Neither Deputy observed anything unusual.

7.      At approximately 2:12 a.m. Deputy Gibson observed that Mr. Linkous had hung himself by wrapping a telephone cord around his neck.  Efforts to aid Mr. Linkous were futile.

8.      The actions of Deputy Gibson and Deputy Simpson were consistent with the actions of other jailers and correction officers in Northeast Tennessee.

Plaintiffs filed a Response to the County's Statement of Undisputed Facts which disputed all but the first paragraph of the County's statement.  However, Plaintiffs' responses essentially consisted of argument and the facts cited do not actually dispute the facts set forth by the County.

The Trial Judge, following oral argument on Defendant's motions, issued Findings of Fact and Conclusions of Law Regarding the Motion, and granted the County's Motion for Summary Judgment. [1] The Trial Court found:

1.      Mr. Linkous was arrested for public intoxication and drug possession on August 16, 2004 and booked into the Hawkins County jail by Deputy Gibson at approximately 9:40 p.m.

---

[1] Although the Findings of Fact and Conclusions of Law states that "defendant's motion for summary judgment will be granted.  A separate order to that effect will be entered contemporaneously with these Findings of Facts and Conclusion of Law" there is no separate order in the record.  Further there is no specific statement that the non-negligence claim made under Tenn. Code Ann. § 8-8-302 was dismissed.  Appellant did not raise the issue of the dismissal of the § 8-8-302 claim on appeal.

2. Although Mr. Linkous was intoxicated when he was booked into the jail, he was able to complete the booking process and answered numerous questions put to him by Deputy Gibson. He responded negatively to the question of whether he had suicidal thoughts. He informed Deputy Gibson that he had a history of seizures and he was prescribed Dilantin for this condition although he was not currently taking that drug. Deputy Gibson determined that he was too intoxicated to sign the booking form.

3. For his safety, because of his intoxicated state, Mr. Linkous was to be held at the jail for at least four hours, until he was sober, before being allowed to bond out.

4. Mr. Linkous's belt and boots were taken from him as part of the booking process. The jail removed belts and shoes from all detained arrestees to prevent self-harm.

5. Due to his intoxicated state, Mr. Linkous was placed in a visitation booth to prevent him from being victimized by other inmates. Hawkins County had been using the visitation booth as a holding area for intoxicated detainees because an extremely violent prisoner was housed in the "drunk tank." The violent prisoner could not be housed safely or securely with other inmates or in the visitation booth which contained items he could destroy, such as windows.

6. Mr. Linkous was visually observed by a jailer approximately every thirty minutes as part of the regular security checks in the jail. He was also taken from the visitation booth to the bathroom twice during the night before his death. The Hawkins County Jail Policies Manuel required regular surveillance of inmates, including "visual inspections" on an hourly basis absent evidence of emotional disturbance, suicidal gesture or ideation, abnormal behavior or medical problems.

7. Neither the patrol officers nor the jailers that dealt with Mr. Linkous from his arrest through his demise in the jail observed anything about Mr. Linkous that indicated he was suicidal or depressed.

8. Deputy Simpson last saw Mr. Linkous alive at approximately 1:35 a.m. on April 17, 2004. Deputy Gibson last saw Mr. Linkous alive a few minutes before 2:00 a.m. on April 17, 2004. During both observations, Mr. Linkous appeared to be resting. Deputy Gibson next observed Mr. Linkous at approximately 2:12 a.m., at which point he had hung himself by a telephone cord attached to the wall of the visitation area. Mr. Linkous was dead.

9.     Mr. Linkous had no known history of suicidal thoughts or actions. He expressed no suicidal ideation and he had no known history of mental illness.

10.    The vast majority of arrestees booked into the Hawkins County Jail are under the influence of some intoxicant.

11.    There is no evidence in the record before the Court to support the allegation that intoxication increases the risk of suicide for a person who has been arrested and is being held in a jail.

The Trial Court's conclusions were:

1.     Hawkins County is responsible for the actions of its employees in operating the Hawkins County Jail. Jail officials "have a duty to exercise ordinary and reasonable care for the protection or the persons in their custody." *Cockrum v. State*, 843 S.W.2d 433, 436 (Tenn. App. 1992).

2.     Although jail officials are not insurers of the safety of their prisoners, the duty owed to their prisoners "can be expanded to include [a duty to protect from] self-inflicted injury or death when the prison officials know or should know that the prisoner might harm himself or herself." *Id*.

3.     Jail personnel's actions to prevent self-harm "must only be reasonable commensurate with the inmate's known condition." *Id* at 438.

4.     "Except in the most obvious cases, whether the prison officials acted reasonably to protect a prisoner's safety requires expert proof or other supporting evidence. *Id.*

5.     There is no genuine issue as to any material fact surrounding the circumstances presented by Mr. Linkous's arrest and incarceration at the Hawkins County Jail. There has been no proof that Mr. Linkous's self-destructive actions were foreseeable.

6.     Hawkins County did not breach a duty to Mr. Linkous to protect him from self-injury because his self-destructive acts were not reasonably foreseeable.

7.     Hawkins County deputies followed their Policy and Procedures by regularly observing Mr. Linkous. No one observed any abnormal behavior such as to warrant a more intense level of scrutiny beyond the approximately every 30 minute observations that were conducted.

8.     Without any expert proof to the contrary, the Court finds that the Hawkins

County deputies exercised ordinary and reasonable care for the protection of Mr. Linkous in this case.

9.   Because Hawkins County did not breach its duty to protect Mr. Linkous, defendant's motion for summary judgment will be granted. A separate order to that effect will be entered contemporaneously with these Findings of Facts and Conclusions of Law.

Plaintiffs appealed and also filed a pleading captioned "Motion for New Trial and Alteration of Judgment and for Relief from Order Granting Defendant's Motion for Summary Judgment." Since there was no trial, the Trial Court presumably treated the motion as a Motion to Alter or Amend Judgment pursuant to Tenn. R. Civ. P. 59.04. Plaintiffs argued that since the personnel knew the deceased was very intoxicated and was an increased risk of suicide, that they should have taken additional precautions to keep the deceased safe. The Motion also presented new evidence that allegedly was not available at the time argument was heard on the motion for summary judgment. The new evidence was in the form of a videotaped statement of Travis Benton, which claimed that he was incarcerated in the Hawkins County jail on the date of decedent's death and that decedent was, for a time, housed with the general population of the jail until two deputies forcibly removed him from the cell block. According to Benton, one of the jailers had a choke hold on the deceased as he was carried out of the cell which had caused his lips to turn blue. Plaintiffs argued that since the video contradicts the affidavits of Deputy Simpson and Deputy Gibson, plaintiffs' newly discovered evidence created a material issue of disputed fact.

The Motion to Alter or Amend was also accompanied by affidavits of plaintiff and attorneys Timothy Wilkerson and Richard Spivey. Plaintiff related that she had attempted to find people who were present in the Hawkins County jail on the day of her husband's death to no avail. Her husband's brother, a bail bondsman, was able to identify Travis Benton as a person who was present at the jail on the day in question. Attorney Wilkerson's affidavit states that he had assisted attorney Spivey in the case, and that it came to his attention in December 2006 that Jeff Linkous, a bail bondsman and the brother of the deceased, was attempting to locate witnesses who had been at the jail on the day of decedent's death but had not been successful in his endeavor. But in late March, 2007 he had located Travis Benton who gave a video statement. Attorney Spivey's affidavit was similar to Wilkerson's affidavit.[2]

In response, the County contended that the motion was without merit because the Benton statement did not refute any of the material facts offered by the County. To support this contention, the County cited *Kenyon v. Haidal,* 122 S.W. 3d 743, 765 (Tenn. App. 2003) holding that a trial court is not required to grant relief from an order granting summary judgment where the plaintiff was unable to demonstrate a genuine issue of material fact. We agree with the County's position. Benton's statement, and the affidavits do not contradict the facts cited by the Trial Court in its Memorandum Opinion. Specifically, the County noted that plaintiffs had not shown: (1) that

---

[2]The summary judgment was granted on April 5, 2007.

Mr. Linkous appeared suicidal, voiced suicidal thoughts, or that his suicide was foreseeable; (2) that Hawkins County departed from the standard of care or; (3) that Mr. Benton had personal knowledge regarding the circumstances or cause of the decedent's death. The County further noted that other than the Benton statement, the remainder of the motion merely rehashed the same arguments the Trial Court had already heard, considered and rejected.

The Trial Court denied Plaintiffs' Motion for New Trial and Alteration of Judgment and for Relief from Order Granting Defendant's Motion for Summary Judgment, and denied Defendant's motion to strike the Benton statement.

Plaintiffs raise these issues on appeal:

A.    Whether the Trial Court erred in granting Hawkins County's Motion for Summary Judgment?

B.    Whether the Trial Court abused its discretion in denying plaintiffs' Motion to Alter or Amend the judgment when the newly discovered evidence proffered by plaintiffs did not show that decedent's suicide was foreseeable?

C.    Whether the Trial Court was correct when it sustained Hawkins County's Objection to plaintiffs' post-judgment requests for admissions?

Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. Tenn. R. Civ. P.56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). The court reviews a summary judgment motion *de novo* as a question of law without a presumption of correctness. *Finister v. Humboldt General Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn. 1998); *Robinson v. Omer*, 952 S.W. 2d 423, 426 (Tenn. 1997). The evidence and all reasonable inferences are viewed in the light most favorable to the nonmoving party. *Byrd*, 847 S.W.2d at 210-211. To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *Lawson v. Edgewater Hotels, Inc.*, 167 S.W.3d 816, 823-24 (Tenn. Ct. App. 2004).

If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim. *Blair v. West Town Mall*, 130 S.W.3d 761, 763-64 (Tenn. 2004).

The standard of review for an appeal of the trial court's ruling on a Rule 59.04 motion to alter or amend a judgment is whether the trial court abused its discretion. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn.2003).

*Cockrum v. State*, 843 S.W.2d 433 (Tenn. Ct. App. 1992) is instructive regarding a

correctional institution's duty to protect prisoners from self-inflicted injury or death. In *Cockrum* a prisoner with a known history of depression, suicidal thoughts and suicide attempts committed suicide by taking an overdose of anti-depressant medication she obtained from an unknown source. *Id.* at 435 - 436. Decedent's husband sued, claiming that the correctional institution's negligent supervision of his wife was the proximate case of the death. The State claimed that the prisoner's suicide was "an intervening, superceding cause" which protected the State from liability for negligently supervising prisoners. *Id.* at 436.

The Court of Appeals first addressed a correctional institution's duty of care to its prisoners and held that while prison officials have a duty to exercise ordinary reasonable care to protect the prisoners incarcerated in their facility, the scope of that duty does not extend to include self-inflicted injury or death unless such injury or death should have been foreseeable by the officials. Thus, correctional officials have a duty to protect prisoners from reasonably foreseeable acts of self-inflicted injury or death. *Id.* at 436. The *Cockrum* Court held that under the circumstances presented the decedent's suicide was foreseeable and her actions alone would not shield the State from liability.

The *Cockrum* Court then went on to inquire whether the correctional officials had breached a duty to the deceased, and if the breach was the proximate cause of her death. *Id.* at 437. The Court noted that prison officials are not insurers of a prisoner's safety and their conduct must only be reasonably commensurate to the inmate's known condition. Except in the most obvious cases, whether the prison officials acted reasonably to protect a prisoner's safety requires expert proof or other supporting evidence. *Id.* at 438 (citations omitted). The Court found that the facts presented did not clearly establish that the correctional officials had breached a duty to the decedent and that expert testimony was necessary for the Court to determine exactly what their duty was and whether that duty had been breached by the defendants. As plaintiff had not produced such evidence, the Court found that dismissal was appropriate as the plaintiff had failed to establish proof of negligence.

In this case Plaintiff alleged the employees at the Hawkins County jail had a duty to keep decedent safe while he was in their custody. Further, that the employees should have recognized that the decedent was at an increased risk of suicide, based on his intoxicated state, and that the duty to deceased had been breached by these personnel. In support of this argument, Plaintiffs contend that it is a well established fact that an intoxicated person is at increased risk of suicide. However, the correctional professionals involved here disagreed with this assumption and Plaintiffs offered no expert testimony to support this supposition. The affidavits submitted by the defendant established that the deceased was specifically questioned regarding whether he was having suicidal thoughts or whether he had a history of suicide attempts. The affidavits further show that the deceased was frequently observed by the jailers and that he was "quiet and respectful" during his interactions with Deputy Simpson and resting quietly when both Deputy Simpson and Deputy Gibson observed him shortly before he was found dead with the telephone cord around his neck. The affidavits establish that the deceased's unfortunate suicide was not foreseeable by his jailers. Plaintiffs failed to present any evidence, expert or non-expert, to refute defendant's statement of

facts on this issue, and the Trial Court did not err in finding that the suicide was not foreseeable by the Hawkins County employees, based on the evidence in the record. Under the holding of *Cockrum,* the Court's granting of summary judgment was correct.

A trial court's determination of whether to grant a Rule 59.04 motion to alter or amend a judgment is reviewed under an abuse of discretion standard. *Stovall v. Clarke*, 113 S.W.3d 715, at 721 (Tenn. 2003). The Supreme Court discussed motions to alter or amend a judgment based on newly produced evidence in *Stovall* and set forth the criteria the trial court must consider:

> When additional evidence is presented in support of such a motion, the trial court should consider the factors applicable to a motion to revise a partial summary judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure: the moving party's effort to obtain the evidence in responding to the summary judgment; the importance of the new evidence to the moving party's case; the moving party's explanation for failing to offer the evidence in responding to the summary judgment; the unfair prejudice to the non-moving party; and any other relevant consideration. *Harris v. Chern*, 33 S.W.3d 741, 744 (Tenn.2000) ( "Cases analyzing Rule 59.04 motions to alter or amend ... offer some guidance in determining the standard for revising non-final orders."). The trial court's ruling on a motion to alter or amend will be reversed only for an abuse of discretion. Id. at 746.

Stovall at 721.

According to the affidavits, Jeff Linkous apparently made Wilkerson aware of the new evidence in late March, 2007, after the hearing on the motion for summary judgment but before the judgment was rendered. Plaintiff contends she had tried to locate individuals who were present in the jail the day her husband died but had been unsuccessful. Her attorneys' affidavits indicate they made no efforts to locate witnesses who could offer testimony regarding what occurred at the jail during the time preceding decedent's death during the two and a half years between the death and the hearing on the motion for summary judgment.

The proffered testimony of Benton does not establish whether the County employees' negligence contributed to decedent's death.[3] The Benton affidavit merely provides that the deceased

---

[3] On appeal Plaintiffs contend that the Benton evidence shows that the actions of the deputies was "of a higher degree than negligence" and may fall under the provisions of Tenn. Code Ann. 8-8-301 *et seq.* However, as this issue was not raised at the trial court level it cannot be considered on appeal. It is a well settled principle of law that issues not raised in the trial court cannot be raised for the first time on appeal. *See, Jordan v. Jordan,* No. W2002-00854-COA-R3-CV, 2003 WL 1092877 at *8 (Tenn. Ct. App. Feb. 19, 2003)(citing *Lovell v. Metro. Gov't,* 696 S.W.2d 2 (Tenn.1985);

was housed for a time with the general population of the jail and two deputies forcibly removed him from the cell. Benton did not witness the suicide, had no knowledge whatsoever of the circumstances of decedent's death, and he offered no testimony that decedent exhibited suicidal tendencies.

There was no adequate explanation of the lack of effort over a two and a half year period to locate witnesses who were present at the jail during the relevant time and moreover, the Benton statement in no way disputes the County's statement of material facts. The Trial Court did not abuse its discretion when it denied plaintiffs' Motion to Alter or Amend the judgment.

Finally, the Trial Court did not abuse its discretion in denying plaintiffs' Post-Judgment Motion, which was based on the Benton statement. The issue of whether the Trial Court erred in granting defendant's Motion to Strike plaintiff's post-judgment request for admissions is moot. The only discernable purpose for the request for admissions was to get defendant to verify the statements made by Mr. Benton in an effort to support the Motion to Alter or Amend.

For the foregoing reasons, we affirm the Summary Judgment entered by the Trial Court and remand, with the cost of the appeal assessed to Audrey L. Linkous.

_____
Herschel Pickens Franks, P.J.

_____

*Lawrence v. Stanford,* 655 S.W.2d 927 (Tenn.1983)).