# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 18, 2012 Session

## JEFFREY WAYNE BUCKNER v. MELISSA BRUNSON (BUCKNER)

### Direct Appeal from the Chancery Court for Dyer County
### No. 06C443    Tony Childress, Chancellor

_____

### No. W2011-01703-COA-R3-CV - Filed March 2, 2012

_____

The parties' final decree of divorce provided that they would equitably share in the sale proceeds of a business that they had sold. After a few months, the wife filed a petition for contempt and/or additional relief, alleging that the husband was not making the payments in compliance with the final decree. The trial court found that husband was in contempt to the extent that he failed to make payment in full on one occasion, but it declined to find the husband in contempt for most of the matters asserted. The wife filed a motion to alter or amend, which was denied. The wife appeals. We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Charles S. Kelly, Jr.,, Dyersburg, Tennessee, for the appellant, Melissa Brunson (Buckner)

Marianna Williams, Dyersburg, Tennessee, for the appellee, Jeffrey Wayne Buckner

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Jeffrey Wayne Buckner ("Mr. Buckner") and Melissa Brunson Buckner ("Ms. Brunson") were divorced on July 25, 2007. The parties had previously owned a trucking business known as Freedom Freight, which they had sold in 2003. The parties were still receiving payments from the buyer of the business at the time of the divorce, and the final decree of divorce addressed those payments in "Section I" as follows:

I. [T]he parties shall equitably share in the sale proceeds of Freedom Freight, as follows: (i) from the monthly payment of $16,800.00, which is currently being received by the Plaintiff, Jeffrey Wayne Buckner, the Plaintiff shall remit to the Defendant, Melissa Brunson Buckner, One Thousand Seven Hundred Eighty-One and no/100 ($1,781.00) Dollars as soon practicable after the first of each month; (ii) beginning in November, 2008, one month after the monthly payment increases to $36,000.00, the Plaintiff shall remit to the Defendant Twelve Thousand ($12,000.00) Dollars as soon as practicable after the first of each month; (iii) in October, 2011, when the final payoff of One Million Five Hundred Thousand Dollars is due, the Plaintiff shall remit to the Defendant an amount equal to one-half (1/2) of the stated payoff amount as soon as practicable after his receipt of same; . . . .

Seven months after the final decree of divorce was entered, on March 18, 2008, Ms. Brunson filed a "Motion for Contempt and/or Additional Relief," claiming that Mr. Buckner was not complying with Section I of the divorce decree. Section I required Mr. Buckner to pay Ms. Brunson $1781 from the monthly payment he received from the buyer of Freedom Freight "as soon as practicable after the first of each month," but Ms. Brunson alleged that Mr. Buckner's payments to her had been substantially delayed into the middle or latter part of the month. Ms. Brunson conceded that Mr. Buckner had informed her that the buyer of Freedom Freight had been tardy in making the payments, so that Mr. Buckner was not able to remit payment to her near the first of the month. However, Ms. Brunson alleged that Mr. Buckner had not provided documentary proof to substantiate his claim that he was receiving the payments late, and she alleged that Mr. Buckner was willfully withholding her payments until she made requests for them through her attorney. Ms. Brunson asked the court to find Mr. Buckner in civil contempt, and also, "[a]s a remedy," to order Mr. Buckner to pay Ms. Brunson her portion of the monthly payment no later than the fifth day of each month.

Ms. Brunson's motion for contempt further stated that due to Mr. Buckner's "track record" of late payments, she was concerned that she would encounter difficulties when the buyer's payments were scheduled to increase to $36,000 in November of 2008, and she was to begin receiving $12,000 of that payment "as soon as practicable after the first of each month." Ms. Brunson asked the court to "take a new look" at how best to assure that she received her portion of the monthly payment from Mr. Buckner. In that regard, Ms. Brunson suggested that the buyer of Freedom Freight should be directed to send her portion of the monthly payments directly to her. Alternatively, Ms. Brunson asked the court to order Mr. Buckner to pay her from his own personal funds no later than the fifth day of each month regardless of when he received payment from the buyer.

Finally, Ms. Brunson alleged that on one occasion since the final decree of divorce was entered, Mr. Buckner sent her a check for only $904, as opposed to the $1781 that she was supposed to receive, along with a note stating that he was deducting the remainder of the payment due to an IRS bill that he paid on her behalf. In conclusion, Ms. Brunson asked the court to find Mr. Buckner in civil contempt, to order him to pay her any unpaid amounts due, and/or to fashion relief to assure that she received her payments in a timely fashion.

Mr. Buckner filed a response in which he admitted that he withheld a portion of one of the payments because Ms. Brunson owed him money for a tax bill. However, Mr. Buckner denied that he was in civil contempt. With regard to the date of his payments, he claimed that he had not been receiving regular payments from the buyer and that he was making every effort to pay Ms. Brunson on time.

The trial court heard testimony from Ms. Brunson, Mr. Buckner, and the buyer of Freedom Freight on April 30, 2009. In addition to the original allegations set forth in the motion for contempt, Ms. Brunson also alleged that Mr. Buckner had failed to increase the amount of her monthly payment from $1781 to $12,000 in November of 2008, when the payments from the buyer were scheduled to increase to $36,000. The trial court ultimately entered a lengthy and detailed order addressing each of the contempt allegations against Mr. Buckner. First, the trial court declined to find that Mr. Buckner was in contempt for failing to make payments in a timely fashion because it found that the divorce decree's provision requiring him to make payments "as soon as practicable after the first of each month" did not set forth with sufficiently clarity the date upon which the payments were required. Next, with regard to the one payment that Mr. Buckner reduced due to the tax bill, the court found that the divorce decree did not authorize Mr. Buckner to deduct money from the monthly payments under Section I, and consequently, the court found Mr. Buckner in civil contempt for failing to pay the total amount due on that one occasion. These rulings are not at issue on appeal.

Finally, the court considered the allegation that Mr. Buckner had failed to increase the payments to Ms. Brunson in accordance with section (ii) of the divorce decree, which stated:

> [B]eginning in November, 2008, one month after the monthly payment increases to $36,000.00, the Plaintiff shall remit to the Defendant Twelve Thousand ($12,000.00) Dollars as soon as practicable after the first of each month[.]

At the hearing, Mr. Buckner had testified that he had not increased his payments to Ms. Brunson because, due to economic difficulties, the buyer of Freedom Freight had never increased the payments to Mr. Buckner. The buyer of Freedom Freight similarly testified that he could not afford to pay $36,000 per month to Mr. Buckner as originally agreed, or else he would be forced to file for bankruptcy. The buyer explained that he had "got behind on taxes" and incurred a substantial tax lien, which required him to make large monthly payments to the IRS.

The trial court found that section (ii) was "simply ambiguous" because it was unclear whether the "triggering event" for Mr. Buckner to increase the payments to $12,000 was the date – November 2008 – or his receipt of increased payments from the buyer of Freedom Freight. The trial court cited caselaw to the effect that a person cannot be held in contempt for violating an order that does not expressly and precisely spell out the details of compliance in a way that enables a reasonable person to know exactly what actions are required, *see* ***Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.***, 249 S.W.3d 346 (Tenn. 2008), and accordingly, it declined to hold Mr. Buckner in civil contempt of provision (ii) of the final decree.

In sum, the trial court only found Mr. Buckner in contempt for his one-time failure to remit $1781 to Ms. Brunson, and it declined to hold him in contempt based upon the remaining allegations. The court ordered that Mr. Buckner could purge himself of contempt by paying a portion of Ms. Brunson's attorney's fees. Regarding the "additional relief" requested by Ms. Brunson, the court, "[f]or the sake of clarity and to erase any ambiguities," defined the phrase "as soon as practicable after the first of each month," as used in the final decree, to mean "three days after [Mr. Buckner] receives the monthly payment" from the buyer. The trial court declined to order the buyer of Freedom Freight to send payments directly to Ms. Brunson, explaining that the court deemed it improper to order a nonparty to take such action.

Within thirty days of the trial court's order, Ms. Brunson filed a "Motion to Alter or Amend and/or for Relief from Judgment,"[1] in which she argued that the trial court erred in concluding that section (ii) of the final decree was ambiguous. Ms. Brunson claimed that she was owed $12,000 beginning in November 2008, regardless of whether Mr. Buckner was receiving any payment at all from the buyer of Freedom Freight, and therefore Mr. Buckner should have been held in contempt. Ms. Brunson also argued that the trial court should amend its order to require Mr. Buckner to exercise his right under the original agreement with the buyer to assert a forfeiture in the event of a default and retake possession of the company.

The trial court entered an order denying the motion to alter or amend in all respects, with the exception that the order was amended to require Husband to pay the amount that he had "shorted" Ms. Brunson on the one occasion due to the tax bill. Ms. Brunson timely filed a notice of appeal.

## II. ISSUES PRESENTED

Ms. Brunson basically frames the issue on appeal as whether the trial court erred in failing to grant her motion to alter or amend in all respects. "We review a trial court's ruling on a motion to alter or amend a judgment under Tennessee Rule of Civil Procedure 59.04 only for an abuse of discretion." *Pace v. Pace*, No. M2009-01037-COA-R3-CV, 2010 WL 1687740, at *3 (Tenn. Ct. App. W.S. Apr. 26, 2010) (citing *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Linkous v. Lane*, 276 S.W.3d 917, 924 (Tenn. Ct. App. 2008)). "The abuse of discretion standard does not allow the appellate court to substitute its judgment for that of the trial court, and we will find an abuse of discretion only if the court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (citations and quotation omitted).

## III. DISCUSSION

### A. Ambiguity

Ms. Brunson first argues that the trial court erred in concluding that subsection (ii) of Section I was ambiguous. "Orders alleged to have been violated should be construed using

---

[1] To the extent that the title of this motion may be unclear, the substance of the motion asked the court to "alter or amend its June 1, 2009 Order," which was the one entered following the hearing on the "Motion for Contempt and/or Additional Relief."

an objective standard that takes into account both the language of the order and the circumstances surrounding the issuance of the order, including the audience to whom the order is addressed." *Konvalinka*, 249 S.W.3d at 356. Again, Section I stated, in relevant part:

> I.    [T]he parties shall equitably share in the sale proceeds of Freedom Freight, as follows: (i) from the monthly payment of $16,800.00, which is currently being received by the Plaintiff, Jeffrey Wayne Buckner, the Plaintiff shall remit to the Defendant, Melissa Brunson Buckner, One Thousand Seven Hundred Eighty-One and no/100 ($1,781.00) Dollars as soon practicable after the first of each month; (ii) beginning in November, 2008, one month after the monthly payment increases to $36,000.00, the Plaintiff shall remit to the Defendant Twelve Thousand ($12,000.00) Dollars as soon as practicable after the first of each month; (iii) in October, 2011, when the final payoff of One Million Five Hundred Thousand Dollars is due, the Plaintiff shall remit to the Defendant an amount equal to one-half (1/2) of the stated payoff amount as soon as practicable after his receipt of same; . . . .

Ms. Brunson argues that subsection (ii) clearly required Mr. Buckner to pay her $12,000 per month beginning in November 2008 regardless of the status of Freedom Freight or whether Mr. Buckner was receiving any payments from the sale. Mr. Buckner argues that subsection (ii) unambiguously provides that his $12,000 payments to Ms. Brunson were to be made from the proceeds of the sale of Freedom Freight, and therefore, the increase in the amount of his payments to Ms. Brunson was contingent upon the increase in the amount of the payments he received from the buyer. Alternatively, Mr. Buckner argues that subsection (ii) is at least ambiguous, so that he cannot be held in contempt for his alleged violation of the order.

We acknowledge that subsection (ii), when read in isolation, does not explicitly state that Mr. Buckner was to pay Ms. Brunson $12,000 from the payment he received from the buyer of Freedom Freight. However, upon reading the entire section, it is clear to this Court that the source of each $12,000 payment was to be the $36,000 payment received by Mr. Buckner from the buyer. The beginning of Section I made clear that it governed how the parties would "equitably share in the sale proceeds of Freedom Freight[.]" Subsection (i) stated that the $1781 payment to Ms. Brunson was to come "from the monthly payment of $16,800.00, which [was] being received by [Mr.] Buckner." Similarly, under subsection (iii), Mr. Buckner was required to pay Ms. Brunson one-half "of the stated payoff amount as soon as practicable after his receipt of same." Although subsection (ii) did not use such explicit language, it did provide that the increase in payments to Ms. Brunson would occur "after the monthly payment increases to $36,000.00." Reading this section as a whole, we do not

interpret it as requiring Mr. Buckner to pay $12,000 to Ms. Brunson regardless of what he was receiving from the buyer.

We also note that before the trial court, Ms. Brunson interpreted Section I in the same manner as we have when she filed her motion for contempt. In that motion, Ms. Brunson explained that Section I "set out how the parties would share in the proceeds from the sale of Freedom Freight." She then stated that she was concerned about the possibility that she would receive payments late "beginning in November of 2008, when, as set out in paragraph I of the Final Divorce Decree, the buyer of Freedom Freight is required to pay the amount of $36,000.00 per month towards the purchase of the business and [Ms. Brunson] is to receive $12,000.00 *of that payment* 'as soon as practicable after the first of each month.'" On appeal, however, Ms. Brunson is attempting to argue that the divorce decree required Mr. Buckner to pay her from his own personal funds, without regard to whether he was receiving payments from the Freedom Freight sale. This she cannot do. *See **Schultz' Estate v. Munford, Inc.***, 650 S.W.2d 37, 40 (Tenn. Ct. App. 1982) (explaining that a party cannot take a position on appeal that is inconsistent with that taken in the trial court).

In sum, we conclude that the divorce decree did not impose an obligation upon Mr. Buckner to pay $12,000 to Ms. Brunson if he was not receiving the $36,000 payment from the buyer of Freedom Freight. At the very least, this is a "reasonable interpretation" of the divorce decree, so that Mr. Buckner cannot be held in contempt for his alleged violation of the order. *See **Konvalinka***, 249 S.W.3d at 356 ("A person may not be held in civil contempt for violating an order unless the order expressly and precisely spells out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden.") Therefore, the trial court did not abuse its discretion in denying Ms. Brunson's motion to alter or amend regarding this issue.

### B.    Other Arguments

We note that Ms. Brunson's arguments have changed and evolved throughout this case, probably due to the fact that, by our count, she has changed attorneys five times. As a result, we find it necessary to address some additional matters.

At oral argument before this Court, counsel for Ms. Brunson argued that the trial court should have revised the final divorce decree to require Mr. Buckner to pay Ms. Brunson a greater portion of the payment that he is currently receiving from the buyer of Freedom Freight until the payments increase to $36,000. In denying the motion to alter or amend, however, the trial judge noted that at the beginning of the hearing, he asked, "This is a civil contempt hearing, correct?" Counsel for Ms. Brunson then responded, "That's correct, your honor." The judge also noted that counsel for Ms. Brunson expressly stated at the hearing,

"I am not asking this Court to modify this agreement."[2]  The order denying the motion to alter or amend states that, apart from the alleged acts of contempt, no other issues were tried by consent.  Therefore, we find no error in the trial court's decision to refrain from modifying the provisions of the final decree.

Next, we note that the issue presented by Ms. Brunson on appeal was whether the trial court erred in denying her motion to alter or amend "in all aspects."  Aside from the issue of ambiguity already discussed above, Ms. Brunson also argued in her motion to alter or amend that the trial court should have ordered Mr. Buckner to assert a forfeiture under the original agreement with the purchaser of Freedom Freight in order to regain possession of the business.  This relief was not requested in the "Motion for Contempt and/or Additional Relief" filed by Ms. Brunson in the trial court, nor was it mentioned in opening statements at the hearing.  During Mr. Buckner's testimony at the hearing, his own attorney did ask him why he had not exercised his right under the contract to retake possession of the business, and he explained that if he did so, he would have to assume the $1.2 million IRS tax lien the buyer had incurred.  However, the issue was never mentioned again, and neither party discussed it during closing arguments.  It was not until Ms. Brunson filed the motion to alter or amend that she argued, for the first time, that Mr. Buckner should have been ordered to assert a forfeiture and retake control of the business.  "A Rule 59 motion should not be used to raise or present new, previously untried or unasserted theories or legal arguments." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005) (citing *Local Union 760 of Intern. Broth. of Elec. Workers v. City of Harriman*, No. E2000-00367-COA-R3-CV, 2000 WL 1801856, at *4 (Tenn. Ct. App. Dec.8, 2000)).  Thus, we find that the trial court did not abuse its discretion in denying Ms. Brunson's motion to alter or amend with regard to this issue.

## IV.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court.  Costs of this appeal are taxed to the appellant, Melissa Brunson Buckner, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[2]  Counsel for Mr. Buckner had noted during her opening statement that Ms. Brunson's petition did not include any request to modify the divorce decree.