FILED

02/09/2022

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 5, 2021 Session

## ROBERT MARTIN THOMPSON v. CHRISTIE LEE THOMPSON

**Appeal from the Circuit Court for Putnam County**
**No. 2015-CV-229    Amy V. Hollars, Judge**
_____

### No. M2020-01293-COA-R3-CV
_____

The sole issue on appeal in this divorce action pertains to the coverture formula employed to fund the husband's marital interest in the wife's retirement account via a deferred distribution method. On the morning the case was set for a final hearing, the parties and their attorneys appeared in open court and announced they had agreed to the division of the marital estate with the exception of the implementing language required to fund the husband's marital interest in the wife's retirement account. Because the wife had a substantially larger account than the husband but lacked the financial resources to fund a present distribution of her retirement account, the parties announced in open court that they had agreed to an offset of their respective pensions and authorized the court to enter a final judgment using the coverture formula to affect a deferred distribution. Following the entry of the final order, the wife filed a Tennessee Rule of Civil Procedure 59.04 motion to set aside the order, contending that the trial court applied a deferred distribution method that did not reflect the parties' agreement. The trial court denied the motion, and this appeal followed. Finding no error, we affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Howard L. Upchurch and Stacy H. Farmer, Pikeville, Tennessee, and Kelsy A. Miller, Cookeville, Tennessee, for the appellant Christie Lee Thompson.

Henry D. Fincher, Cookeville, Tennessee, for the appellee, Robert Martin Thompson.

## OPINION

### FACTS AND PROCEDURAL BACKGROUND

Robert Martin Thompson ("Husband") and Christie Lee Thompson ("Wife") were married on September 22, 1995. This divorce action was commenced by Husband on August 25, 2015. Following contentious proceedings, the parties were declared divorced on December 22, 2017, resulting in a marriage totaling 22 years.[1] Other issues, including specifically the division of marital assets, remained unresolved.

During the majority of their marriage, both parties were employed as public educators, and each individually participated in and accumulated rights to retirement investments through Tennessee Consolidated Retirement System ("TCRS").

Wife began working as a teacher and participating in her TCRS account in October 1995. Husband began working as a teacher and participating in his TCRS account in 2000. Both Husband and Wife were still participating in their respective TCRS accounts when Husband filed for divorce in 2015 and when the final decree was entered.

The values of the marital assets and debts were not disputed. Aside from their respective TCRS accounts, the marital estate consisted primarily of debt at the time of their divorce.[2] The retirement benefits Wife accumulated during the marriage significantly exceeded those accumulated by Husband due to her longer service, vesting, and higher pay. David Pitts, Husband's actuarial expert, assigned a present value of $365,314 to Wife's account and a present value of $115,013 to Husband's TCRS account; however, neither account vested during the divorce proceedings because the parties continued to work and participate in their respective TCRS account. *See Cohen v. Cohen*, 937 S.W.2d 823, 826 (Tenn. 1996) (explaining that "[a]n unvested retirement account is one in which the time requirements have not been fulfilled").

When the case came on for a final hearing on March 19, 2018, the parties announced in open court that they had settled the division of the marital estate. Because Wife's TCRS account was significantly larger than Husband's account, and she lacked the liquid assets to fund a present distribution of Husband's marital interest in her TCRS account, the parties agreed that Husband would receive a coverture percentage of 27% of Wife's TCRS retirement benefits via a deferred distribution method. However, the parties could not agree upon the implementing language regarding the division of the parties' retirement accounts. To avoid the necessity of further litigation, the parties authorized the court to determine and include in the Final Order the language needed to implement their agreement. During

---

[1] The parties only child was an adult at the time of the divorce.

[2] The parties' marital estate included a home, that was encumbered, and personal vehicles of modest value, which are not at issue in this appeal.

the hearing, the trial court acknowledged that an agreement had been reached and stated the following:

> It is the Court's understanding that a resolution has been reached in this matter which had to do with the property division and a request for support.
>
> .    .    .
>
> I have been provided with very thorough briefs by both attorneys telling me what they believe the facts of the case would be, providing detailed spreadsheets regarding your property and debt and differing valuations of the defined benefits plans through TCRS. And I want to tell you that we took a long time this morning trying to look at a spreadsheet, trying to adjust it to try to reach some position of approaching equality.
>
> That meant that I was presented with very different positions regarding how those benefits plans should be valued and the Court gave Counsel my reading of the law on how that valuation works. **And under my understanding— from my understanding of the appellant cases on this, that is a settled issue of law, that those defined benefits plans must be valued according to a calculation that takes into account the future income flow from that account**.

(Emphasis added).

In response to the court's statements, Husband's counsel explained during the hearing—with no objection—that "[Wife] will be paying a coverture percentage of 27% of the marital portion of the retirement to [Husband] upon her retirement." After some additional, unrelated discussion, the trial court specifically asked both Husband and Wife whether they had heard what had been announced in court and if they agreed to it; both parties responded affirmatively.

The Final Order was entered on October 29, 2018, and recited that the parties had entered into an agreement regarding the division of their marital property and debts; that the parties announced their agreement under oath to the court; and that the court approved the parties' agreement. The Final Order also reads in pertinent part:

> 2. The Court finds that the parties relied upon and agreed to a coverture percentage division of [Wife's] retirement account, and arrived at the percentage in part based upon actuarial valuations that assumed the parties would continue working and would receive periodic raises, and that the following language shall be used to divide [Wife's] Tennessee Consolidated

Retirement System (TCRS) account and the TCRS is directed to abide by said order of the Court:

> *Husband shall receive a share calculated by using a coverture percentage of twenty-seven percent (27%), and that the following formula shall be used to calculate Husband's share of Wife's retirement: twenty-two (22) years of marriage divided by Wife's total years of TCRS service, said fraction being multiplied by twenty-seven percent (27%). The resulting percentage shall be applied to any payment from Wife's TCRS retirement of any nature, including lump sum, monthly payments, beneficiary distributions or otherwise, and shall be paid directly to Husband by TCRS.*

(Emphasis in original).

Following the entry of the October 29, 2018 order, Wife filed a motion to alter or amend the trial court's judgment or, in the alternative, for a new trial, seeking relief under either Tennessee Rule of Civil Procedure 59.04 or 60.02.[3] Wife claimed that the Final Order "erroneously set forth a division of [Wife's] retirement benefits which would include the increase in value or growth of [Wife's] retirement benefits after entry of the Judgment and through and until the date retirement benefits [are] distributed to [Wife]." Wife asserted that the Final Order erroneously permits Husband to receive more than his marital portion of her retirement benefits. Resultantly, she asked the trial court to amend the Final Order to reflect the "true agreement of the parties."

The court denied the motion and explained, "While the provisions are not verbatim, the Court has reviewed the transcript and the Final Order filed on October 29, 2018, and FINDS that the supplementary language in said order merely clarifies and implements the provisions of the parties' agreement as announced in Court and imposes no material additional obligations on either party than what they assumed under oath in the presence of the Court."[4]

---

[3] We note that Wife filed this motion within 30 days of the Final Order being entered. Importantly, "Rule 59.04 allows a party to seek relief from a judgment within thirty days after being entered; conversely Rule 60.02 affords a party a means to seek relief from a final, non-appealable judgment." *Ferguson v. Brown*, 291 S.W.3d 381, 387 (Tenn. Ct. App. 2008) (citing *Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn. 1977)). When Wife's motion was received and filed by the clerk's office, the judgment was not yet a final, non-appealable judgment. Thus, Rule 59.04 is the applicable rule, and we decline to address any argument for relief under Rule 60.02.

[4] The order went on to state:

Questions arose regarding the Qualified Domestic Relations Order (QDRO) that is anticipated to be required in order to implement the parties' announced agreement and the

- 4 -

This appeal followed.

## ISSUES

Wife contends that the trial court erred by entering the Final Order which was contrary to the parties' announced understanding and which provided for an erroneous division of Wife's TCRS retirement benefits.[5]

Husband insists the Final Order is fully consistent with the agreement announced in open court. Husband also contends Wife's appeal is frivolous, which entitles him to an award of attorney's fees.

## STANDARD OF REVIEW

The matters at issue were first raised in Wife's Tennessee Rule of Civil Procedure 59.04 Motion to Alter or Amend the Final Order. We review a trial court's ruling on a motion to alter or amend a judgment under Rule 59.04 for an abuse of discretion. *Linkous v. Lane*, 276 S.W.3d 917, 924 (Tenn. Ct. App. 2008) (citing *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003)). Pursuant to this standard, we review a trial court's decision to determine, where applicable, whether there is a factual basis for the decision in the record, whether the court properly identified and applied the applicable legal principles, and whether the decision is within the range of acceptable alternative dispositions. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *See Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

---

Court's order of October 29, 2018, regarding [Wife's] Tennessee Consolidated Retirement System (TCRS) retirement account. [Husband's] counsel is directed to prepare a draft of a proposed QDRO that reflects the Court's order, to circulate it to counsel and then to provide it to the Court through either agreement or lodging. TCRS shall be provided both a copy of the Court's October 29, 2018 order, this order, and the QDRO, and shall be requested to review and approve the same.

[5] Wife included an argument, for the first time, in her appellate brief that the trial court lacked the authority to enter the Final Order because the parties could not agree upon the language to implement the division of Wife's TCRS retirement account. However, because this issue was not raised at the trial court and has been raised for the first time on appeal, we conclude that the issue is waived. *See In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009) (holding that a party who did not properly raise an issue in the trial court had "waived his right to argue this issue for the first time on appeal"); *Dye v. Witco Corp.*, 216 S.W.3d 317, 321 (Tenn. 2007) (holding that an issue raised for the first time on appeal was waived); *Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996) (holding that "issues raised for the first time on appeal are waived"). Thus, we decline to address this alternative argument.

ANALYSIS

## I. DIVISION OF WIFE'S RETIREMENT ACCOUNT

As explained above, the issues presented in this appeal were first raised in the trial court in Wife's Rule 59.04 Motion to Alter or Amend the Final Order.

"The purpose of Tenn. R. Civ. P. 59 motions is to prevent unnecessary appeals by providing the trial courts with an opportunity to correct errors before a judgment becomes final." *U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co.*, 410 S.W.3d 820, 826 (Tenn. Ct. App. 2012) (citations omitted). "Rule 59 can provide relief from a judgment due to mistake, inadvertence, surprise, or excusable neglect." *Pryor v. Rivergate Meadows Apartment Associates Ltd. P'ship*, 338 S.W.3d 882, 885 (Tenn. Ct. App. 2009) (citing *Henson v. Diehl Machines, Inc.*, 674 S.W.2d 307, 310 (Tenn. Ct. App. 1984)).

In her motion, Wife claimed that the Final Order "erroneously set forth a division of [Wife's] retirement benefits which would include the increase in value or growth of [Wife's] retirement benefits after entry of the Judgment and through and until the date retirement benefits [are] distributed to [Wife]." Stated another way, Wife asserted that the Final Order erroneously permits Husband to receive more than his marital portion of her retirement benefits. Resultantly, she asked the trial court to amend the Final Order to reflect the "true agreement of the parties."[6]

The crux of this matter is whether the implementing language the court employed to fund Husband's marital interest in Wife's retirement account via a deferred distribution method was contrary to the parties' agreement as announced in open court or contrary to Tennessee law.

---

[6] More specifically, the motion reads, in pertinent part:

1. [A] Final Judgment was prepared by counsel for the Plaintiff, Robert Martin Thompson, which erroneously set forth a division of these retirement benefits which would include the increase in value or growth of the Defendant's retirement benefits after entry of the Judgment and through and until the date retirement benefits were distributed to the Defendant.

2. All of these provisions were contrary to the understanding of the Defendant regarding the disposition of these assets and the settlement agreement entered into between the Defendant and the Plaintiff and announced to the Court on March 19, 2018.

3. That the Final Judgment entered on October 29, 2018 does not reflect the agreement of the Defendant and contains the objectionable provisions identified in paragraph 2 above.

We begin our discussion with the agreement as announced by the parties in open court on March 19, 2018. With both Husband and Wife in attendance, their respective counsel announced that an agreement had been made resolving the division of marital property. Following this announcement, the trial court and counsel proceeded to outline, in detail, the provisions upon which the parties agreed. Notably, the parties agreed to the application of the coverture formula with a coverture percentage of 27%. In response to a question by the trial court, Wife acknowledged that she understood and agreed to pay "a coverture percentage of 27 percent **of the marital portion** of the retirement to [Husband] upon her retirement." (Emphasis added). Husband made a similar acknowledgment. Moreover, at no point during the hearing in open court did Wife or her counsel state any objection to the terms presented to the court. The Final Order that followed reads in pertinent part:

> 2. The Court finds that the parties relied upon and agreed to a coverture percentage division of [Wife's] retirement account, and arrived at the percentage in part based upon actuarial valuations that assumed the parties would continue working and would receive periodic raises, and that the following language shall be used to divide [Wife's] Tennessee Consolidated Retirement System (TCRS) account and the TCRS is directed to abide by said order of the Court:
>
>> *Husband shall receive a share calculated by using a coverture percentage of twenty-seven percent (27%), and that the following formula shall be used to calculate Husband's share of Wife's retirement: twenty-two (22) years of marriage **divided by Wife's total years of TCRS service**, said fraction being multiplied by twenty-seven percent (27%). The resulting percentage shall be applied to any payment from Wife's TCRS retirement of any nature, including lump sum, monthly payments, beneficiary distributions or otherwise, and shall be paid directly to Husband by TCRS.*

(Emphasis added).

Wife contends the trial court's order is not consistent with the parties' agreement. Specifically, she contends it erroneously affords Husband a greater division of Wife's TCRS retirement benefits. This argument is based on Wife's contention that she agreed to Husband's receipt of a specific percentage of the TCRS account accrued **during their marriage**, but that the trial court's inclusion of the phrase **divided by Wife's total years of TCRS service** in the coverture fraction affords Husband a greater distribution of her benefits than the parties agreed to and permits Husband to receive benefits based off an increase in value accumulated by post-divorce contributions.

For his part, Husband maintains that the deferred distribution method provides a workable framework for the division of Wife's unvested retirement benefits and limits Husband's award to his martial portion of Wife's retirement account. Husband takes the position that the standard coverture formula only applies to the marital share of unvested pension benefits because the coverture fraction[7] requires the years of Wife's service **accrued during the marriage** to be divided by Wife's **total years of service calculated on the date of her retirement**. Husband further argues that application of the agreed-upon coverture percentage[8] ensures an equitable division of the marital portion of Wife's retirement benefits.

Tennessee authorizes two methods for the division of pensions in divorce proceedings[9]: present value or deferred distribution. *Cohen*, 937 S.W.2d at 831. Present value is an actuarial method of calculating the current value of a future income stream that "requires the trial court to place a present value on the retirement benefit as of the date of the final decree." *Id.* "Once the present cash value is calculated, the court may award the retirement benefits to the employee-spouse and offset that award by distributing to the other spouse some portion of the marital estate that is equivalent to the spouse's share of the retirement interest." *Id.* The present cash value method is preferable when "the marital estate includes sufficient assets to offset the award." *Id.*

---

[7] The "coverture fraction" also known as the "time rule formula" or "martial property interest" represents the marital portion of the benefits and is expressed:

Numerator:    Years of Pension Service Accrued During Marriage
Denominator:  Total Years of Service at Retirement

*See Croley v. Tiede*, No. M1999-00649-COA-R3-CV, 2000 WL 1473854, at *4 (Tenn. Ct. App. Oct. 5, 2000).

[8] The "coverture percentage" is the percentage of the coverture fraction awarded to the non-employee spouse. *See Maher v. Woodruff*, No. M2016-01468-COA-R3-CV, 2017 WL 1372865, at *5 (Tenn. Ct. App. Apr. 13, 2017). Classically, the coverture percentage is 50 percent. *See, e.g.*, *Croley*, 2000 WL 1473854, at * 7 (holding that the "non-employee spouse should receive a portion, usually half, of the amount which is the [coverture] fraction multiplied times the employee spouse's actual monthly retirement benefit"). But the coverture percentage can be any percentage that is agreed upon by the parties or deemed equitable by the court. *See Patric v. Patric*, No. 03A01-9111-CH-00389, 1992 WL 32634, at *6 (Tenn. Ct. App. Feb. 25, 1992) (explaining that the "[d]ivision of martial property must be equitable, not equal" and that the trial court has "wide discretion in dividing the marital assets in order to best effectuate that purpose").

[9] This court has explained that while unvested pension rights are not specifically included within the statutory definition of marital property, unvested pension rights accruing during a marriage are marital property subject to equitable division in divorce cases in accordance with Tennessee Code Annotated § 36-4-121. *Kendrick v. Kendrick*, 902 S.W.2d 918, 923–24 (Tenn. Ct. App. 1994).

In contrast, "deferred distribution" does not require a determination of the present value. Instead, "the court may determine the formula for dividing the monthly benefit at the time of the decree **but delay the actual distribution until the benefits become payable**." *Id.* (emphasis added). Thus, the deferred distribution method permits the non-employee spouse to receive their marital share in the future rather than at the time of divorce. *See Kendrick*, 902 S.W.2d at 927–28 (explaining that deferred distribution is preferred when the marital estate does not contain sufficient property to offset an award upon divorce of the parties). **When vesting or maturation is uncertain or when the retirement benefit is the parties' greatest or only economic asset, courts have preferred the "deferred distribution" method to distribute unvested retirement benefits.**[10] *Cohen*, 937 S.W.2d at 831 (citing *Kendrick*, 902 S.W.2d at 927–28) (emphasis added).[11]

It is undisputed that Wife's TCRS account had not vested when the Final Order was entered. This is because Wife is still working and still contributing to her plan. It is also undisputed that Wife's TCRS account was her greatest asset and that she lacked sufficient liquid assets to fund a present distribution of the present value of Husband's marital interest in her TCRS account. Finding no error with the trial court's decision to apply the deferred distribution method to the facts of this case, we proceed with our analysis of the trial court's application of deferred distribution method.

The deferred distribution method is calculated in two steps: (1) the coverture or marital fraction is multiplied by a percentage that represents the non-employee spouse's equitable interest in the martial portion of the retirement benefits; (2) and the resulting percentage is multiplied by the employee spouse's total monthly retirement benefits to calculate the amount due to the non-employee spouse. *See Croley*, 2000 WL 1473854, at * 7; *see also Cohen*, 937 S.W.2d at 831 n.9. The coverture fraction represents the "marital portion," which is then equitably divided between the parties as marital property. *See McFarland v. McFarland*, No. M2005-01260-COA-R3-CV, 2007 WL 2254576, at *14 (Tenn. Ct. App. Aug. 6, 2007) (explaining that the coverture fraction represents the marital portion of the retirement benefits of which the non-employee spouse should receive a portion to affect an equitable division of the employee spouse's monthly benefits); s*ee also* Tennessee Code Annotated § 36-4-121.

The trial court used the following to compute the first step: 22 years of marriage divided by Wife's total years of TCRS service at retirement, said fraction to be multiplied

---

[10] This court has held that the present value method is inappropriate when pension rights are unvested and has recommended the deferred distribution method to value and distribute an unvested pension. *Kendrick*, 902 S.W.2d at 928.

[11] We note that when dealing with retirement accounts, the choice of valuation method is a discretionary one that depends on the facts of the case. *Kendrick*, 902 S.W.2d at 928 (citations omitted).

by 27%.[12] The resulting percentage of that calculation was then ordered to be applied to Wife's monthly TCRS retirement.

The formula used by the trial court reflects the parties' agreement. At the final hearing, counsel for both parties agreed to use the deferred distribution method. The parties do not dispute that they were married from September 22, 1995, until December 22, 2017, totaling 22 years of marriage, which is the number represented by the numerator in the trial court's coverture fraction. The trial court left the denominator as an unknown—Wife's total years of TCRS service at retirement—a number that will only be determinable at Wife's retirement.[13] The parties agreed that Husband should receive "27% of the marital portion of the retirement account," which is reflected in the Final Order. Nothing in the trial court's application of the coverture formula was erroneous or in contradiction to Tennessee Law.

The trial court properly applied the deferred distribution method with respect to the division of Wife's future monthly benefit and the parties' agreement. Accordingly, we affirm the judgment of the trial court in all respects.

## II. ATTORNEY FEES

As a final matter, we acknowledge Husband's request for attorney's fees pursuant to Tennessee Code Annotated § 27-1-122, which states:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"The decision whether to award damages for a frivolous appeal rests solely in our discretion." *Kramer v. Kramer*, No. E2018-00736-COA-R3-CV, 2019 WL 1239867, at *5 (Tenn. Ct. App. Mar. 18, 2019) (citing *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn.

---

[12] We acknowledge the possible confusion presented by the trial court's reference to Wife's equitable interest of 27% as a "coverture percentage of 27%," but we recognize that in application, the trial court correctly applied the deferred distribution method. In explaining the division of Wife's retirement account, the trial court ordered the coverture fraction to be multiplied by 27%, which the parties agreed represented Husband's equitable interest in the martial portion of Wife's retirement benefits. The trial court ordered that the resulting percentage "should be applied to any payment from Wife's TCRS retirement." Despite the trial court's references to a "coverture percentage of 27%," it is apparent from the record that the court was referring to an equitable interest of 27%.

[13] Notably, as Wife continues to work, the denominator of the coverture fraction increases, and the non-employee spouse's share in the retirement benefit decreases. *Croley*, 2000 WL 1473854, at *9.

Ct. App. 2009)). "A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that it can ever succeed." *Indus. Dev. Bd. of City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995) (citations omitted). Based on our review of the record and in the exercise of our discretion, we decline to award attorney's fees in this appeal.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Wife, Christie Lee Thompson.

_____
FRANK G. CLEMENT JR., P.J., M.S.