# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
January 13, 2015 Session

## HEATHER WALKER SELLERS v. BILLY JOE WALKER

**Appeal from the Chancery Court for Bradley County**
**No. 06-191      Jerri S. Bryant, Chancellor**

---

**No. E2014-00717-COA-R3-CV-FILED-APRIL 29, 2015**

---

This action involves the modification of a child support award. The trial court determined the self-employed obligor's income to be consistent with amounts deposited in his personal bank account, rather than the income reported on his federal tax returns, and calculated his child support obligation accordingly. The obligor has appealed the trial court's determination regarding his income and resultant child support obligation. We determine that the trial court properly based the obligor's income on the combined amount of his annual deposits. We also determine that the trial court properly set the obligee's income based on her testimony. We reverse the trial court's calculation regarding the amount of child support to be paid, however, due to a mathematical error in the trial court's income calculation and its failure to consider the obligor's self-employment taxes. We remand the case for a recalculation of child support utilizing the proper monthly income for the obligor and taking into consideration the amount of self-employment tax paid by him.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

John P. Konvalinka and Jillyn M. O'Shaughnessy, Chattanooga, Tennessee, for the appellant, Billy Joe Walker.

Jerry Hoffer, Cleveland, Tennessee, for the appellee, Heather Walker Sellers.

## OPINION

### I. Factual and Procedural Background

The plaintiff, Heather Walker Sellers ("Mother"), and the defendant, Billy Joe Walker ("Father"), were divorced on February 23, 2007. Two children were born of their marriage. At the time of the divorce, the children were four years old and two years old respectively. The parties entered into an agreed Permanent Parenting Plan ("PPP") and Marital Dissolution Agreement, both of which were incorporated into their Final Decree. The PPP provided, *inter alia*, that Father would pay $800 per month in child support to Mother, which was a $21 upward deviation from the calculation reflected on the respective child support worksheet. According to the PPP, because Father was self-employed[1] with fluctuating income, the parties agreed that Father's income would be established at $9,750 per month, an amount the parties determined to be "fair and equitable." The attached child support worksheet demonstrated that the parties factored in payment of day care expenses for the children, who were not yet of school age. The parties did not, however, consider Father's payment of self-employment taxes.

On April 18, 2012, Mother filed a petition seeking modification of the PPP and review of Father's child support obligation. Mother sought review of the child support obligation due to Father's fluctuating income and also because the children's day care expense had ended. Father filed a response and counter-petition requesting a review of his child support obligation, asserting that the obligation should be decreased and that his payment of self-employment taxes should be considered. By agreement, the parties resolved issues regarding co-parenting and entered into an amended PPP. The trial court approved the agreed, amended PPP, reserving the remaining issues of child support and court costs for subsequent hearing.

The trial court conducted a hearing on February 28, 2013. At the beginning of the hearing, Mother's counsel stated, *inter alia*:

> based on our review of the numbers and calculations as far as Ms. Sellers goes, at this time we are satisfied that there is no substantial variance and as such that the child support would remain the same. . . . I understand that Mr. Walker wishes to have that review and request for a downward modification, which I think would be his burden of proof.

Father's counsel responded by affirming that Father did seek a downward modification of child support. Father's counsel accordingly asked the court to determine each party's

---

[1] Father was engaged in the purchase and resale of automobiles.

2

respective income, who would pay health insurance expenses, and whether income should be imputed to Mother due to her underemployment.

The trial court heard testimony from both parties and Father's accountant. Father's accountant testified that he prepared Father's tax returns from information provided by Father regarding his gross sales for the year. The accountant presented the trial court with Father's Schedule Cs for 2009 through 2012, which depicted the amounts of profit generated by Father's automobile sales. Father asserted that his tax returns were the proper measure of his income. By contrast, Mother contended that Father's income should be measured by the amounts of money he deposited annually into his personal bank account, which was significantly greater than the income shown on his tax returns. At the conclusion of the proof, the trial court took the matter under advisement.

In a written order issued July 17, 2013, the trial court found that Father's original income determination of $9,750 per month was a compromise between the parties because they had recognized that Father's income fluctuated. The trial court determined instead that Father's current income should be set based on the average of the total deposits to his personal bank account for the three years preceding the hearing. In support of its determination, the trial court stated that it did not accord great weight to the testimony of Father's accountant because the accountant did not audit or personally verify Father's financial information. The trial court questioned Father's testimony regarding his income because his bank deposits were sufficiently greater than his reported income or profit. The court did not find credible Father's claims that any additional amounts deposited were monies he received from loans. Considering the evidence, the court thus determined Father's income to be $8,080 per month, a reduction from his income in 2007. The court set Mother's income at $300 per week and the resultant child support award at $1,073 per month based on the applicable child support worksheet.

Father subsequently filed a motion to alter or amend the judgment, asserting that his income was calculated incorrectly because several deposits to his personal bank account were derived from sources other than the business. Father attached numerous pages of documentation to support this assertion. Father maintained that Mother's income should have been set at a higher amount. Father also averred that his payment of the children's health insurance premiums was not considered in the child support calculation. Alternatively, Father argued that the trial court should not have modified child support because Mother's attorney conceded at the hearing's outset that there was no significant variance. *See* Tenn. Code Ann. § 36-5-101(g)(1). Mother subsequently filed a motion seeking attorney's fees and retroactive child support.

The trial court entered an order regarding these motions on November 18, 2013. The court found that the parties did agree during the hearing that Father's payment of

3

health insurance premiums should be included in the calculation, but the court did not adjust its determination of Father's income. The court stated that while Mother did not request an increase in support, "once child support becomes an issue, the court is under an obligation to set child support at the appropriate amount." The trial court also found that Mother should receive retroactive child support and attorney's fees but did not make any specific monetary awards. Mother subsequently sought a garnishment for the retroactive child support award. Father filed a motion to stay the garnishment on January 2, 2014.

On April 10, 2014, the trial court entered an order staying the garnishment, awarding a specific amount of attorney's fees to Mother, setting child support at $1,017 per month based upon a child support worksheet prepared by Father that included his payment of health insurance premiums, and setting the amount of Father's arrearage. Father timely appealed.

## II. Issues Presented

Father presents the following issues for review, which we have restated slightly:

1. Whether the trial court erred in its calculation of Father's child support obligation by improperly determining the amount of Father's income.

2. Whether the trial court erred in its calculation of Father's child support obligation by failing to consider Father's self-employment taxes.

3. Whether the trial court erred in its calculation of Father's child support obligation by improperly determining the amount of Mother's income.

## III. Standard of Review

This Court has described the proper standard of review for child support determinations as follows:

Setting child support is a discretionary matter. Accordingly, we review child support decisions using the deferential "abuse of discretion" standard of review. This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3)

4

whether the decision is within the range of acceptable alternatives. While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

*State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). *See also Massey v. Casals*, 315 S.W.3d 788, 798 (Tenn. Ct. App. 2009) ("We note that determinations of child support lie within the discretion of the trial court."). Further, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)).

## IV. Father's Income

Father first contends that the trial court erred in its determination of his income for the purpose of setting child support. Father is self-employed in the business of buying and selling automobiles, and he pays self-employment tax. Father's federal return Schedule C profit from his business transactions, after the payment of all expenses, was demonstrated to be:

| Year | Profit |
|------|--------|
| 2009 | $33,248 |
| 2010 | $42,103 |
| 2011 | $62,542 |
| 2012 | $57,030 |

Father's accountant testified that Father reported all income from the sale of a vehicle in the year that it was sold, despite the fact that he sometimes financed the vehicle for the buyer, thus not receiving all of the purchase money in that year. According to the accountant, Father's deposits to his personal bank account were greater than that shown as income on his Schedule C because he was receiving payments for automobiles he had sold in previous years. The accountant also explained that Father also might have deposited funds that he borrowed from his line of credit, which he then used to purchase other vehicles for resale. The accountant opined that Father's deposits were thus not the proper measure of his income. Father also testified that he deposited other funds into his bank account that were not income from his business, such as proceeds from the sale of a house, funds he borrowed from his business line of credit, and amounts he repaid himself for loans he made to the business. Father presented a dearth of documentary evidence to support his claims.

5

Mother asserts, however, that the trial court found the accountant's testimony to lack credibility because the accountant performed no independent audit of the information provided by Father. Both Father and his accountant acknowledged that the funds Father withdrew from the business were completely within Father's discretion. Mother argues that the trial court properly based Father's income on his bank deposits, as were the circumstances in the case of *Smith v. Smith*, No. E2003-02642-COA-R3-CV, 2004 WL 2964695 at *3 (Tenn. Ct. App. Dec. 22, 2004). Mother posits that the monies Father deposited were the best measure of the funds he actually had available to support the children. Mother further contends that Father failed to prove that the deposited funds were not income.

With regard to this issue, the trial court stated:

> Father reports that he made $42,103 in 2010 selling cars and $62,542 in 2011. He claimed a $57,030 profit in 2012. In 2011, even though Mr. Walker showed income from his business of $62,542, he deposited $89,597 into his personal account. In 2012, with approximately the same amount of gross sales, he showed a profit of $57,030, yet he deposited $92,103 into his personal account. He further told the court he had a loss for that year. He explained to the court that some of the money that was deposited into his account *could have* been through loans, but he produced no documentation of any such loans. At the time child support was originally set in 2007, Mr. Walker had $574,062 in gross sales. There is no proof of income other than from the business.

| | Gross Sales | Gross Income | Net Profit | Deposits |
|---|---|---|---|---|
| *2010* | $482,371 | $116,203 | $42,103 | $159,000 |
| *2011* | $477,545 | $139,419 | $62,542 | $89,597 |
| *2012* | $435,810 | $131,750 | $57,030 | $92,103 |
| *Average:* | $465,242 | $129,124 | $53,892 | $113,567 |

> * * *

> Father's deposits into his personal account are much greater than the income he is claiming on his tax returns. The court does not find credible his explanation for additional money being in his account as a loan for any years other than 2010. There was no proof of his borrowing money or selling assets in any other year.

6

Based on the above, the court hereby determines Father's income to be $8,080 per month, which is the average of the income shown for the last three (3) years per his deposits. This is a reduction from his 2007 income.

Upon our thorough review of the record, we conclude that the trial court did not err by considering and accepting the amount of Father's deposits to his personal bank account as the best evidence of his actual income. The Child Support Guidelines provide the following definition of gross income:

Gross income of each parent shall be determined in the process of setting the presumptive child support order and shall include all income from any source (before deductions for taxes and other deductions such as credits for other qualified children), whether earned or unearned, and includes, but is not limited to, the following:

(i) Wages;

(ii) Salaries;

(iii) Commissions, fees, and tips;

(iv) Income from self-employment;

(v) Bonuses;

(vi) Overtime payments;

(vii) Severance pay;

(viii) Pensions or retirement plans including, but not limited to, Social Security, Veteran's Administration, Railroad Retirement Board, Keoughs, and Individual Retirement Accounts (IRAs);

(ix) Interest income;

(x) Dividend income;

(xi) Trust income;

(xii) Annuities;

(xiii) Net capital gains;

(xiv) Disability or retirement benefits that are received from the Social Security Administration pursuant to Title II of the Social Security Act, whether paid to the parent or to the child based upon the parent's account;

(xv) Workers compensation benefits, whether temporary or permanent;

(xvi) Unemployment insurance benefits;

(xvii) Judgments recovered for personal injuries and awards from other civil actions;

(xviii) Gifts that consist of cash or other liquid instruments, or which can be converted to cash;

(xix) Prizes;

(xx) Lottery winnings; and

(xxi) Alimony or maintenance received from persons other than parties to the proceeding before the tribunal.

Tenn. Comp. R. & Regs., ch. 1240-02-04-.04. Further, as our Supreme Court has recognized:

These guidelines, when applied to an obligor whose income is derived from a salary and an occasional bonus or dividend, yield an easily quantitated child support amount. Once the obligor's income has been determined and the Child Support Guidelines have been applied, the calculation of child support is made with certainty, predictability, and precision.

Although achieving such precision is possible when calculating the child support owed by a salaried obligor, the calculation is much more difficult and much less precise when the obligor is self-employed. *See Koch v. Koch*, 874 S.W.2d 571, 576 (Tenn. Ct. App. 1993). The Child Support Guidelines therefore provide a different method for calculating a self-employed obligor's income. In the self-employed obligor's situation, the guidelines require the trial court to consider all income of the obligor parent, reduced only by reasonable expenses to produce the income.

8

Income from self-employment "includes income from business operations and rental properties, etc., less reasonable expenses necessary to produce such income." Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(a)(2) (1994).

These self-employment guidelines are fashioned in such a way as to authorize the trial court to address the potential of a self-employed obligor to manipulate income for the purpose of avoiding payment of child support. Courts have recognized that a self-employed obligor has the opportunity "'to manipulate his reported income by either failing to aggressively solicit business or by inflating his expenses, thereby minimizing his income.'" *Mitts v. Mitts*, 39 S.W.3d 142, 148 (Tenn. Ct. App. 2000) (quoting *Sandusky v. Sandusky*, No. 01A01-9808-CH-00416, 1999 WL 734531, at *4 (Tenn. Ct. App. Sept.22, 1999)).

*Taylor v. Fezell*, 158 S.W.3d 352, 357-358 (Tenn. 2005).

As Mother aptly points out, in prior cases this Court has affirmed the trial court's use of deposits to an obligor's bank account as the best evidence of the obligor's actual income for child support purposes when the bank account deposits greatly exceeded the obligor's reported income or profit from a business. *See Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723 at *11 (Tenn. Ct. App. Sept. 18, 2007) (determining a self-employed obligor's income to be $149,228 based on business account deposits and expenses despite his reporting zero net income on his federal income tax return); *Radebaugh v. Radebaugh*, No. M2005-02727-COA-R3-CV, 2006 WL 3044155 at *12 (Tenn. Ct. App. Oct. 26, 2006) (remanding the case to the trial court for re-calculation of the husband's child support obligation based on reliable information pertaining to his gross receipts and business expenses); *Smith*, 2004 WL 2964695 at *3 (determining that the trial court did not err by setting the obligor's child support in part based on deposits to his bank account rather than reported income).

In *Smith*, the obligor relied upon his tax returns to demonstrate that his annual income ranged from $63,000 to $71,000. *See* 2004 WL 2964695 at *1. The obligee, however, provided the obligor's bank records, demonstrating that the obligor deposited from $111,000 to $172,000 into his personal bank account for those same years. *Id.* The trial court set the obligor's income based on his bank account deposits, minus the amount of funds he was able to demonstrate that he obtained through verifiable loans. *Id.* at *2. This Court affirmed the trial court's determination, stating:

The bank documents admitted into evidence by Stepfather--and the summaries thereof--showed the following total deposits to Father's accounts: $111,240 in 2000; $144,267 in 2001; and $172,632 in 2002. By

9

contrast, Father's income tax returns for those years showed an income of $69,251 in 2000; $71,356 in 2001; and $63,724 in 2002. Father points out that Stepfather testified that he had no way of knowing the origin of the deposits or which deposits were true representations of Father's income. Based upon this testimony, Father contends that such deposits are not an accurate measure of his income. While Father stated that transfers between accounts were counted twice and that he had several thousand dollars in business reimbursements, he offered no proof other than his general assertion to substantiate this position. Instead, Father relied solely upon his income tax returns. This failure of proof was noted by the trial court in its opinion. Without proof that the deposits to Father's accounts were not income, we find that the evidence does not preponderate against the trial court's decision to use these deposits as the starting point in calculating Father's income.

*Smith*, 2004 WL 2964695 at *3 (vacating amount of judgment on other grounds).

Similarly, in the case at bar, Father sought to rely exclusively on his federal tax returns to demonstrate the proper amount of his income. Mother, on the other hand, sought to rely on Father's bank records to establish his income because the amount of the deposits to his personal bank account greatly exceeded the amount of his reported income. Although Father generally testified that some deposits to his personal account were not income from his business,[2] such as amounts he borrowed from his business line of credit and amounts he repaid to himself for loans he made to the business, he produced no documentary evidence to support his contentions. Father failed to provide specific dollar amounts regarding deposits that he claimed were not income. Therefore, based on the proof presented to the trial court, we conclude that the court did not err in utilizing the amount of Father's deposits in determining his income for child support purposes.

Father contends that if this Court affirms the trial court's use of his deposits to establish his income, this Court should remand for a consideration of the documentation attached to Father's motion to alter or amend filed pursuant to Tennessee Rule of Civil Procedure 59. Father asserts that this evidence demonstrates that certain deposits were not business income. Regarding the presentation of additional evidence through a motion to alter or amend, this Court has previously stated:

The purpose of a Rule 59 motion to alter or amend a judgment is to provide

---

[2] Father also claimed that he deposited funds he received from the sale of a house. We note that capital gains, even those from an isolated transaction, are to be considered when calculating income for the purpose of setting child support. *See* Tenn. Comp. R. & Regs., ch. 1240-02-04-.04; *Moore v. Moore*, 254 S.W.3d 357, 360 (Tenn. 2007).

the trial court with an opportunity to correct errors before the judgment becomes final. *U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co.*, 410 S.W.3d 820, 827 (Tenn. Ct. App. 2012) (citing *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005)). "A Rule 59 motion should only be granted 'when controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice' and 'should not be used to raise or present new, previously untried or unasserted theories or legal arguments.'" *In re Lawton*, 384 S.W.3d 754, 764 (Tenn. Ct. App. 2012) (quoting *In re M.L.D.*, 182 S.W.3d at 895).

\* \* \*

As noted above, a motion to alter or amend may be granted "when previously unavailable evidence becomes available." *In re Lawton*, 384 S.W.3d at 764. The Tennessee Supreme Court discussed motions to alter or amend a judgment based on newly produced evidence in *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003) and set forth the criteria the trial court must consider. *Linkous v. Lane*, 276 S.W.3d 917, 924 (Tenn. Ct. App. 2008). When a party files a Rule 59 motion seeking to alter or amend a judgment and attempts to present additional evidence in support of such a motion, the trial court should consider: the moving party's effort to obtain the additional evidence that the moving party seeks to present; the moving party's explanation for failing to offer the evidence earlier in the proceedings; the importance of the new evidence to the moving party's case; the unfair prejudice to the non-moving party; and any other relevant consideration.

*Legens v. Lecornu*, No. W2013-01800-COA-R3-CV, 2014 WL 2922358 at \*14-15 (Tenn. Ct. App. June 26, 2014). In the case at bar, the evidence appended to Father's Rule 59 motion was not shown to have been previously unavailable. Father did not demonstrate that he made any effort to obtain this documentation before the trial. Father also provided no explanation for his failure to offer the evidence at trial.

As this Court has elucidated:

The granting or denial of a motion to alter or amend or for a new trial based on newly discovered evidence is within the discretion of the Trial Court. Newly discovered evidence must be of such character as to convince the Court that an injustice has been done and that a new trial will change the result. A further requirement is that by exercise of "reasonable diligence"

11

the evidence could not have been procured for trial. A mere statement of due diligence is not sufficient, but the facts constituting diligence must appear, and the facts must be specifically set out. Mere general statement that affiant inquired among persons likely to know, is not sufficient, the particulars must be shown.

*Parker v. Bd. of Comm'rs of Roane Cnty., Tenn.*, No. 03A01-9906-CH-00202, 2000 WL 134911 at *8 (Tenn. Ct. App. Feb. 4, 2000) (internal citations omitted). In the instant action, Father failed to demonstrate that the evidence in question could not have been produced at trial. Therefore, the trial court did not err in denying Father's Rule 59 motion and refusing to consider the documentation attached thereto.

Father also contends that the trial court erred by undertaking to adjust his child support obligation at all in light of Mother's attorney's announcement at the beginning of the hearing that there should be no modification of child support because there was no substantial variance in Father's income. As previously stated, the trial court addressed this issue, stating that although Mother did not seek an increase in support at trial, "once child support becomes an issue, the Court is under an obligation to set child support at the appropriate amount." *See* Tenn. Comp. R. & Regs., ch. 1240-02-04-.05. We also note that Father's attorney specifically asked the trial court at the outset of the hearing to make a determination regarding the parties' respective incomes. Further, the parties both sought a recalculation of child support based on the fact that the parties were no longer incurring day care expenses. We find no error in the trial court's decision to determine Father's income and recalculate child support.

Mother acknowledges, however, that the trial court committed a mathematical error in its calculation of Father's income. We agree. The trial court found the three-year average of Father's deposits to be $113,567 per year but extrapolated that such sum would provide Father with an income of $8,080 per month. As Mother correctly notes, $113,567 per year divided by twelve months is actually $9,463 per month. Therefore, we find it necessary to remand this case for a recalculation of child support based on Father's actual monthly income amount of $9,463.

## V. Self-Employment Taxes

Father asserts that the trial court further erred in its calculation of his child support obligation by failing to consider the amount of self-employment taxes he paid. As Father points out, the Tennessee Child Support Guidelines provide:

For a self-employed parent who is paying self-employment tax, an amount for FICA–six and two-tenths percent (6.2%) Social Security plus one and

forty-five hundredths percent (1.45%) Medicare as of 1991, or any amount subsequently set by federal law as FICA tax–shall be deducted from that parent's gross income earned from self-employment, up to the amounts allowed under federal law, and actually paid by the parent.

Tenn. Comp. R. & Regs., ch. 1240-02-04-.04(3)(a)(4)(b). Father states that the trial court did not follow this mandate when setting his income for child support purposes. We agree.

The Guidelines clearly provide that self-employment taxes paid by a parent "shall be deducted from that parent's gross income . . . ." *See* Tenn. Comp. R. & Regs., ch. 1240-02-04-.04(3)(a)(4)(b)(emphasis added). The child support worksheet also provides a place for this deduction to be made. Such was not accomplished in this case, however, even though Father's tax records demonstrated the amount of self-employment taxes attributed to him. Therefore, upon remand, the trial court shall also consider the proper amount of self-employment taxes to be deducted from Father's gross income, pursuant to the above provision of the Guidelines, when the court recalculates Father's child support obligation.

## VI. Mother's Income

Finally, Father contends that the trial court erred in determining the amount of Mother's income. The trial court set Mother's income at $300 per week, based on her testimony at trial that she was currently working in her husband's office for minimum wage. According to Father, Mother had earned $15 per hour at the time of the parties' divorce and should have been able to find comparable pay with a different employer. Mother testified at trial that her previous employer, a telemarketing company, had gone out of business. Mother testified that she currently earned a net income of $261 per week through working for her husband. According to Mother, she maintained only a high school education with no formal job training that would enable her to locate employment with higher compensation. Based on our review of the record, we conclude that the evidence does not preponderate against the trial court's determination of Mother's income. *See Smith*, 2004 WL 2964695 at *3.

## VII. Conclusion

For the reasons stated above, we affirm the trial court's determination of Mother's income, as well as the trial court's determination that Father's income should be based on the amount of the deposits to his personal bank account, which averaged $113,567 annually for the three years prior to trial. We reverse, however, the trial court's computation of Father's monthly income based on this average, finding that the correct

amount of his monthly income would be $9,463.  We remand the case for recalculation of Father's child support obligation utilizing the amount of $9,463 as Father's monthly income and also taking into consideration the amount of self-employment taxes paid by Father.  Costs on appeal are taxed one-half to the appellant, Billy Joe Walker, and one-half to the appellee, Heather Walker Sellers.

_____
THOMAS R. FRIERSON, II, JUDGE