IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 5, 2022 Session

# MICHAEL J. BOEH ET AL. v. ARTHUR M. DIAL ET AL.

**Appeal from the Circuit Court for Williamson County**
**No. 2018-188        Joseph A. Woodruff, Judge**

_____

## No. M2021-00520-COA-R3-CV

_____

This case pertains to the purchase of real property in a residential subdivision. The dispute arises from the fact that, at the time of sale, the lot was incorrectly listed as not being in a flood plain. Upon learning of the flood plain issue, the seller filled and graded the lot and abutting property, after which the regulatory authorities removed the lot from the flood plain zone. Despite the fact the lot was removed from the flood plain, the buyers commenced this action against the seller and its engineering firm, asserting claims for negligent misrepresentation, breach of contract, and violation of the Tennessee Consumer Protection Act ("TCPA"). Following discovery, the defendants filed separate motions for summary judgment, and the motions were set for hearing on the same day. When the buyers did not file a response in opposition to either of the motions and did not appear at the summary judgment hearing, the seller voluntarily continued the hearing on its motion. The engineering defendants, however, proceeded with the hearing, and the trial court granted summary judgment in their favor. The buyers, claiming they did not receive proper notice of the hearing, filed a Tennessee Rule of Civil Procedure 59 motion to set aside the order granting summary judgment to the engineering defendants. Following a hearing on the remaining motions, the trial court denied the buyers' Rule 59 motion on the finding the buyers had constructive notice of the hearing. The court also granted summary judgment in favor of the seller on the claims of breach of contract and the TCPA. The trial court determined that the contract permitted the defendants to "grade" the land and rectify the flood plain issue even after closing. As such, the trial court found that the buyers did not have a claim for breach of contract. As to the claim that the seller violated the TCPA, the trial court explained that the TCPA requires some degree of fault, which was not present. Having determined that the buyers had constructive notice of the hearing on the engineering defendants' motion for summary judgment, we conclude that the trial court did not abuse its discretion in denying the buyers' Rule 59.04 motion. We also affirm the trial court's decision to grant summary judgment in favor of the seller concerning the claims for breach of contract and TCPA. Thus, we affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and J. STEVEN STAFFORD, P.J., M.S., JJ., joined.

Matthew A. Grossman, Richard E. Graves, and Benjamin W. Weigel, Knoxville, Tennessee, for the appellants Michael J. Boeh and Anna M. Boeh.

John Willet, Memphis, Tennessee, for the appellees, Arthur Dial and Energy Land & Infrastructure, LLC.

Christopher B. Fowler and Scott R. Brown, Nashville, Tennessee, for the appellees, NVR Homes, Inc. d/b/a Ryan Homes and Thomas K. Sidwell.

## OPINION

### FACTS AND PROCEDURAL BACKGROUND

On October 10, 2016, Michael and Anna Boeh entered into a Purchase Agreement with NVR, Inc. d/b/a Ryan Homes ("NVR"). The Purchase Agreement required NVR to construct a new house on a recently plotted lot in the Stream Valley Subdivision in Franklin, Tennessee, commonly known as 212 Coffenbury Court, Franklin, Tennessee 37064, and more fully described as Lot No. 431 on the plan of Stream Valley PUD Subdivision, Section 13, of record at Plat Book P64, Page 124 of the Register's Office for Williamson County, Tennessee (hereinafter, the "Property"). The agreed-upon price for the lot and newly constructed home was $441,920. The sale closed on April 20, 2017.

Engineering services were provided by Energy, Land & Infrastructure, LLC and its employee Arthur Dial (hereinafter, collectively "ELI") prior to and subsequent to the execution of the Purchase Agreement as well as subsequent to closing. Initially, ELI rendered services necessary to complete the development of the Stream Valley Subdivision and subdivide the land into lots so that residential homes could be constructed. Moreover, the development of the subdivision necessitated a Letter of Map Revision Request ("LOMR") to be sent to the Federal Emergency Management Agency ("FEMA") to revise the location of the boundary for the 100-year flood plain line as declared on FEMA's flood plain maps, which were based on the as-developed conditions of Stream Valley Subdivision after all cut and fill of the lots and the construction of rainwater detention areas was completed.

Prior to the Boehs' closing on April 20, 2017, ELI recorded the Original Plat, which was last revised on July 28, 2016, in the Williamson County, Tennessee Register's Office on September 9, 2016. The Original Plat was recorded before the FEMA LOMR process was complete and depicted an estimated location for the revised FEMA LOMR flood plain line based upon as-developed conditions. According to the Original Plat, the Property was wholly outside the bounds of the 100-year flood plain with no part of the Property

bordering the flood plain. The Original Plat incorrectly depicted the location of the flood plain since the FEMA map depicted the FEMA 100-year flood plain as encroaching upon a portion of the rear of the Property. Critically, the Boehs never received or reviewed the Original Plat before entering the Purchase Agreement.

It was not until July 24, 2017, that NVR discovered a potential issue with the flood plain. According to Mr. Boeh's deposition, in July of 2017, an NVR employee, Dan Crunk, came to the Boehs' house and said:

> [T]hey discovered that the corner of [the] property was in the floodplain, in a high-risk floodplain. And that they were going to work with the city of Franklin and with FEMA to get that taken out of the floodplain and they would have to do some work on the property.

According to Mr. Boeh's deposition testimony, this is when the Boehs became aware of a flood plain issue. When the issue came to their attention, ELI and NVR took measures to grade, fill, and re-plat the Property so that it would be removed from the flood plain once the LOMR process was completed.

Pursuant to the LOMR request, FEMA revised its 100-year flood plain map for the area in which the Property was located, and the Revised Plat was recorded in the Williamson County Register's Office on January 24, 2018. The Revised Plat showed that the 100-year flood plain did not encroach on the Property. Nevertheless, the Boehs were still unhappy with the Property because the flood plain bordered the Property.

Accordingly, the Boehs sold the Property for $510,000 on September 9, 2020. Despite selling the Property for more than they paid to acquire it, the Boehs claimed that the Property was less valuable than it would have been had the Original Plat been correct. Specifically, the Boehs complained that if not for the difference in the location of the flood plain boundary, they likely could have sold the Property for $515,000. Further, the Boehs argued that they would not have purchased the Property in the first place had they known of its proximity to the flood plain.

The Boehs commenced this action against NVR and ELI on April 17, 2018.[1] They alleged, *inter alia*, a claim against ELI for negligent misrepresentation and claims for breach of contract and violation of the TCPA against NVR. The claim against ELI for negligent misrepresentation was based on the Original Plat, which incorrectly depicted the

---

[1] In addition to NVR and ELI, the complaint asserted claims against K. Thomas Sidwell, Mortgage Electronic Registration Systems, Inc., NVR Mortgage Finance, Inc., and Stream Valley Franklin, LLC. In its Answer Stream Valley asserted a cross-claim against ELI for implied indemnification. All of the claims against these defendants, as well as the cross-claim, were ultimately pretermitted by settlement agreements and orders dismissing the claims. Thus, these claims are not discussed in this opinion.

Property as being located outside the flood zone. Despite never having seen the Original Plat, the Boehs argued they justifiably relied on its accuracy. Essentially, they claimed that the local zoning ordinance requires that property not overlap with a flood plain to acquire a building permit. The Boehs asserted that if the Original Plat had accurately reflected the location of the flood plain, no building permit would have been issued. Because of the inference that government action is valid, they claimed that their reliance was justified.

As for NVR, the Complaint asserted a claim for breach of contract and a claim violation of the TCPA. The contract claim was based on the contention that NVR breached the Purchase Agreement by "failing to convey the Property in a manner consistent with the depiction of the Property shown on the Original Plat." The Boehs TCPA claim was sought pursuant to Tennessee Code Annotated § 47-18-104(b)(12), which states that "unfair or deceptive acts or practices" such as "[r]epresenting that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law" constitute an unlawful violation of the Act.

On September 3, 2019, ELI moved for summary judgment, arguing that the Boehs could not establish a prima facie case for negligent misrepresentation. The trial court scheduled the hearing for November 21, 2019, but notice of the summary judgment hearing—which was provided by the circuit court clerk—was only provided via email, and the email addresses for two of the Boehs' attorneys—Matthew Grossman and Richard Graves—were misspelled. However, the email was sent to the correct address for the Boehs' third attorney, Benjamin Weigel.

Shortly after ELI's motion was filed, NVR filed its motion for summary judgment on September 20, 2019, and gave notice that its motion would be heard on November 21, 2019, the same date ELI's was set for hearing. NVR asserted that summary judgment was appropriate on the Boehs' claims for breach of contract and TCPA on the basis that: no contractual breach occurred, the Boehs waived any claim regarding the location of the flood plain line, NVR had no liability under the TCPA, and the Boehs were not damaged by the representations in the Original Plat.

The Boehs did not file a response in opposition to either motion for summary judgment. Moreover, although it is undisputed that the Boehs had actual notice of the hearing for NVR's motion and were aware that it was set at the same date and time as ELI's motion, no one appeared to oppose either motion. Following discussion among the trial court, counsel for ELI, and counsel for NVR, the trial court granted ELI's motion and summarily dismissed the Boehs' claims against ELI. NVR, however, elected to continue the hearing on its motion for summary judgment.

Claiming they did not receive notice that ELI's motion was set for hearing on November 21, 2019, the Boehs timely filed a Rule 59.04 motion to alter or amend the order granting summary judgment in favor of ELI.

- 4 -

On January 25, 2021, the parties filed a joint motion for status conference to address the Boehs' outstanding motion to alter or amend and NVR's outstanding motion for summary judgment. Following a status conference, the trial court entered an order setting all pending motions for a hearing on March 25, 2021. Because the Boehs had not yet filed a Rule 56 response in opposition to ELI's or NVR's motion for summary judgment, the court permitted the Boehs to submit their Rule 56 response in opposition to both NVR's and ELI's motion for summary judgment.[2] Accordingly, the Boehs filed written responses opposing ELI's and NVR's motions for summary judgment.

On March 25, 2021, the court heard arguments on the Boehs' motion to alter or amend and NVR's motion for summary judgment. Following the hearing, the trial court found that notice of the November 21, 2019 hearing was provided to the Boehs via email. Although the email incorrectly listed two of the email addresses for the Boehs' attorneys, the email address for the third attorney was correct. Based on this and other facts before the court, the trial court held that the Boehs had actual notice of the hearing and denied the Boehs' motion to alter or amend. With regard to the Boehs' contention that they had a meritorious defense to ELI's motion for summary judgment, the court additionally found:

> [The Boehs] do not dispute that they had no actual notice of the floodplain line as depicted on the Original Plat. Instead, [the Boehs] creatively argue that they were on constructive notice of the contents of the Original Plat. The Court finds no basis in the law for allowing [the Boehs]' negligent misrepresentation claim to proceed on a theory of constructive reliance. Because it is undisputed that [the Boehs] did not rely on the Original Plat, their negligent misrepresentation claims must fail as a matter of law, and the Court's December 9, 2018 ruling would remain unchanged on the merits.

(Footnotes omitted).

The court also granted NVR summary judgment as to both of the Boehs' claims—breach of contract and violation of the TCPA. As to the breach of contract claim, the court explained that changes to "grading" included changes to the location of the flood plain line in relation to the Property.

Notably, § 1 of the Purchase Agreement provides:

---

[2] Court approval was necessary because Civil Rule 5.03(c) of the Twenty-First Judicial District Local Rules of Practice requires the responses in opposition to motions for summary judgment be filed no less than three days prior to the scheduled hearing on the motion, and the date of the scheduled hearing had already passed.

We make no representations or warranties about what other improvements may be constructed within the Community including home types, sizes, location or prices or the uses of property adjacent to the Property or to the Community. Any plan or information You may have seen for this community are subject to change. Unless otherwise stated in an addendum to this Agreement, We have no obligation to provide You with copies of the preliminary or final site plans, the record plat, blueprints, general plan maps or other planning documents which may affect the planning and development of the surrounding area.

Further, the court noted that the "Tree Save, Grading, Conservation Easement and Limit/Line of Disturbance Acknowledgment" in the Purchase Agreement provided that the Property was subject to change:

2. The tree save areas, limits of clearing or limits of disturbance, and grading are shown on the Plat for the Property; however, these areas and the actual grading are subject to change based on actual site conditions.

Additionally, the Purchase Agreement specifically precludes reliance on any oral statements made on behalf of NVR through § 16, which states that unless provided in writing, no oral promises are enforceable.

The trial court explained that "it is clear from the plain language of the agreement that the parties understood and agreed that certain conditions on and surrounding [the Boehs'] lot were subject to change." In particular, the court found that the parties "expressly agreed that any grading shown on the Original Plat was subject to change."

Regarding the Boehs' TCPA claim, the trial court held that it was undisputed that NVR had no intent to deceive the Boehs. The court also noted that a violation of the TCPA required some evidence of fault by NVR, and there was no proof of fault. Accordingly, the trial court granted NVR's motion for summary judgment on the TCPA claim as well.

This appeal followed.

**ISSUES**

We have consolidated the Boehs' issues on appeal as follows:

1. Whether the trial court erred by denying the Boehs' Rule 59 motion to alter or amend?

2. Whether the trial court erred in granting NVR summary judgment?

- 6 -

## STANDARD OF REVIEW

We review a trial court's ruling on a Rule 59.04 motion to alter or amend under the abuse of discretion standard. *Linkous v. Lane*, 276 S.W.3d 917, 924 (Tenn. Ct. App. 2008) (citing *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003)). Pursuant to this standard, we review a trial court's decision to determine, where applicable, (1) whether there is a factual basis for the decision in the record, (2) whether the court properly identified and applied the applicable legal principles, and (3) whether the decision is "within the range of acceptable alternative dispositions." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *See Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

A trial court's decision to grant summary judgment is reviewed "de novo, without a presumption of correctness." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, this court must make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Id.* In so doing, we consider "the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264.

When a motion for summary judgment is made and supported as provided in Tennessee Rule of Civil Procedure 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* at 265. Instead, the nonmoving party must respond with specific facts showing there is a genuine issue for trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

ANALYSIS

I. MOTION TO ALTER OR AMEND

Within thirty days of the court granting ELI's motion for summary judgment, the Boehs filed a Tennessee Rule of Civil Procedure 59 motion to alter or amend the order—more specifically, to set aside the order—based on the failure of the trial court clerk to properly serve the notice of hearing for ELI's motion for summary judgment in compliance with Rule 5.02(2)(a) of the Twenty-First Judicial District Local Rules of Practice, Civil Rules. The Boehs contend that service was not proper for the following reasons: (1) the circuit court clerk only attempted to serve the notice via email; (2) the email was incorrectly addressed to two of the Boehs' three attorneys;[3] (3) nothing in the subject line of the email advised the recipients that email service was being made pursuant to Tennessee Rule of Civil Procedure 5.02(2)(a); and (4) and the circuit court clerk did not mail a subsequent certificate to the parties to alert them of the attempted service by email—the certificate was sent via email only. Following a hearing, the court denied the motion to alter or amend, and we find no error with this discretionary decision.

The basis of the Boehs' contentions is that they did not receive proper notice of the scheduled hearing of ELI's motion for summary judgment. The record, however, as we discuss in more detail below, reveals that counsel for the Boehs were aware that ELI's motion had been set for hearing on November 21, 2019, and that the Boehs requested a stay of the hearing, but the request for a stay of the hearing was denied by ELI's counsel.

ELI's motion for summary judgment was properly filed and served on all counsel on September 3, 2019. Moreover, it is undisputed that all three counsel for the Boehs received the motion. Thereafter, NVR filed its motion, which included a notice of hearing that read:

**THIS MOTION IS SET TO BE ON THIS COURT'S MOTION DOCKET ON THE 21ST DAY OF NOVEMBER 2019. PURSUANT TO LOCAL RULE 26.04(G), FAILURE TO FILE AND SERVE A TIMELY WRITTEN RESPONSE WILL INDICATE THAT THE MOTION IS UNOPPOSED AND IT MAY BE GRANTED WITHOUT FURTHER HEARING**.

Then, on September 24, 2019, Christopher Fowler—one of NVR's attorneys—sent an email asking the Boehs' counsel if they had any objection to NVR's motion for summary judgment being heard "**along with ELI's**." Mr. Grossman—one of the Boehs' attorneys—

---

[3] The clerk sent emails to mgrossman@fmsllp.cpom instead of mgrossman@fmsllp.com and rgrave@fmsllp.com instead of rgraves@fmsllp.com. The email to Mr. Weigel was sent to his correct email address.

responded on September 24, 2019, stating that **he would prefer for both of the motions for summary judgment be "put off"** pending settlement efforts between NVR and the Boehs regarding construction disputes.

Approximately one month later, on October 18, 2019, Mr. Grossman emailed Mr. Dial, ELI, and NVR's counsel—Mr. Fowler and John Willet—to explain that the Boehs were attempting to resolve warranty issues and requesting "that the parties put this matter (including dispositive motions) on hold pending completion of the warranty work." Mr. Grossman continued in the same email: "I would be happy to prepare an agreed stay order, if anyone feels it would be necessary." Mr. Willet, counsel for ELI, responded by explaining that while his clients hoped the Boehs would be able to resolve their dispute with NVR, his clients could not agree to stay the hearing on their motion for summary judgment. As a consequence, both motions remained on the docket for hearing on November 21, 2019.

Of additional significance is the fact that, although more than thirty days had passed since the filing of motions for summary judgment by ELI and NVR, no response in opposition to either motion for summary judgment was filed by the Boehs prior to the hearing on November 21, 2019. This is significant because the Twenty-First Judicial District Local Rules of Practice, Civil Rule 5.03(d) reads:

> If, at the time a motion is filed the moving party sets the motion to be heard, the motion shall conspicuously state the date and time of the hearing and shall advise the non-moving party that the failure to file and serve a written response may result in the motion being granted without further hearing.

Based on the foregoing and other facts in the record, the court found that it could "infer constructive notice of the November 21, 2019 summary judgment hearing from the various communications between counsel for Plaintiffs and counsel for Defendants after the Notice was served." Having reviewed the record, we conclude that the evidence does not preponderate against this finding.

Furthermore, and the foregoing notwithstanding, when relief from a judgment due to "excusable neglect" is sought pursuant to Rule 59, the motion asserting excusable neglect must discuss not only whether the defaulting parties' conduct was willful but also "whether the defaulting party has a meritorious defense and whether the non-defaulting party will be prejudiced by the granting of relief." *See Discover Bank v. Morgan*, 363 S.W.3d 479, 493–94 (Tenn. 2012). Here, however, the Boehs' Rule 59 motion was devoid of any meritorious defense or argument as to whether the non-defaulting parties, ELI and NVR, would be prejudiced by the granting of relief. Instead, the Boehs' motion focused exclusively on notice and procedural due process. This omission is important because, as this court has explained:

Although failure to serve a proper party may lead to reversal of the judgment against that party, "[a] simple denial of service by a party is never sufficient to set aside a judgment." "That is not to say that [the] presumption may not be rebutted, if the testimony of a party is supported by other disinterested witnesses or by corroborating circumstances." "[T]here obviously exists the possibility of proof that a document was not received even though a certificate of service appears on it." However, "[t]he burden is on the complaining party to show by clear and convincing evidence that he was not served." Rebuttal evidence of non-receipt creates an issue of fact for the court to resolve.

*Christy v. Christy*, No. M2021-00192-COA-R3-CV, 2022 WL 951254, at *6 (Tenn. Ct. App. Mar. 30, 2022) (citations omitted) (quoting *Se. Bank & Tr. v. Caldarera*, No. E2015-00353-COA-R3-CV, 2015 WL 7890039, at *3 (Tenn. Ct. App. Dec. 4, 2015)).

This court was presented with a similar scenario in *Howes v. Swanner*, No. M2016-01892-COA-R3-CV, 2017 WL 2192065 (Tenn. Ct. App. May 17, 2017), wherein the trial court granted the plaintiff's motion for summary judgment after the defendants failed to file a response or appear at the hearing. *Id.* at *2. The defendants subsequently filed a motion for relief under Rule 60.02,[4] asserting that they did not receive notice of the hearing. *Id.* at *3. We found that, under the circumstances, the defendant's failure to respond to the motion for summary judgment and to appear at the hearing was not willful. *Id.* at * 6. Yet, the trial court denied the defendants' motion, and this court affirmed, finding, *inter alia*, that the defendants did not address the meritorious-defense and prejudice factors in their motion. *Id.* at *6.

---

[4] This court has explained that the standard for setting aside a default judgment due to "excusable neglect" applies when the judgment is the result of a party's failure to respond to a motion for summary judgment and appear at the hearing. *Berge v. Warlick*, No. M2018-00767-COA-R3-CV, 2019 WL 93281, at *3 (Tenn. Ct. App. Jan. 3, 2019) (citing *Howes*, 2017 WL 2192065, at *4). The standard for setting aside a default judgment due to "excusable neglect" is:

> [W]hen a party seeks relief from a default judgment due to "excusable neglect," whether pursuant to Rule 54.02 (for interlocutory judgments), Rule 59.04 (for final judgments within thirty days of entry), or Rule 60.02 (for final judgments more than thirty days after entry), a reviewing court must first determine whether the conduct precipitating the default was willful. If the court finds that the defaulting party has acted willfully, the judgment cannot be set aside on "excusable neglect" grounds, and the court need not consider the other factors. *If the conduct was not willful, however, then the court must consider whether the defaulting party has a meritorious defense and whether the non-defaulting party would be prejudiced by the granting of relief.* The court may also consider any other factor that it deems relevant.

*Discover Bank*, 363 S.W.3d at 493–94 (emphasis added) (footnote omitted).

Therefore, we conclude that the trial court did not abuse its discretion in denying the Boehs' Rule 59 motion to alter or amend. *See Linkous v. Lane*, 276 S.W.3d 917, 924 (Tenn. Ct. App. 2008) (stating that we review a trial court's ruling on a Rule 59.04 motion to alter or amend under the abuse of discretion standard (citing *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003))).

Because the motion to alter or amend was correctly denied, we do not reach the merits of the Boehs' negligent misrepresentation claim against ELI on appeal.

## II. BREACH OF CONTRACT

The trial court granted NVR summary judgment on the breach of contract claim, finding the Purchase Agreement allowed for changes to the FEMA floodplain in relation to the Property. More specifically, the court based this conclusion on the provision in an addendum which provided that "grading . . . shown on the Plat" was "subject to change based on actual site conditions."

The Boehs contend that NVR breached the Purchase Agreement because it "required NVR to sell [the Boehs] Lot 431 as shown on the Original Plat." They also contend the trial court erroneously concluded that the Purchase Agreement allowed for changes to the FEMA flood plain. In this regard, the Boehs assert that the trial court erred by relying on extrinsic evidence to supply a technical meaning for the term "grading" instead of the ordinary meaning.

NVR insists the breach of contract claim was properly dismissed because NVR did not materially breach the contract. In this regard, NVR notes that it sold the Boehs a legal and buildable residential home that was approved by the City of Franklin. Moreover, any potential breach was cured, as the Property is no longer located in a flood plain. More specifically, as NVR notes in its brief, "[t]o the extent there were any discrepancies or inaccuracies in the plat, they have been corrected." Thus, NVR argues that the Boehs suffered no damages, which is an essential element of any breach of contract claim.

It is undisputed that the Original Plat incorrectly depicted the Property as being separated from the 100-year flood plain line by a few yards when in actuality the 100-year flood plain encroached upon the Property at closing. As such, the Boehs insist that NVR breached the Purchase Agreement at closing and that the court's inquiry should stop there. However, the court's inquiry did not stop there.

Instead, the trial court relied on extrinsic evidence to supply a technical meaning for "grading" instead of using the ordinary meaning. Specifically, the trial court relied on the definition of "grading" as set forth in the Franklin Municipal Code, which defines "grading" as:

Any operation or occurrence by which the existing site elevations are changed; or where any ground cover, natural or manmade, is removed; or any watercourse or body of water, either natural or manmade, is relocated on any site, thereby creating an unprotected area. This includes stripping, cutting, filling, stockpiling, or any combination thereof, and shall apply to the land in its cut or filled condition. Grading activities may only be performed with a stormwater management permit and grading permit.

Franklin, Tenn., Code § 23-103(33).

Based on the definition for "grading" in the Franklin Municipal Code, the trial court held that "[t]he literal meaning of the term 'grading,' as that term is commonly understood in Williamson County, includes changes in site elevation for the purpose of directing water." The trial court interpreted the Purchase Agreement as contemplating that the "grading shown on the Original Plat was subject to change" and concluded that the subsequent changes to the Property had been anticipated and were permitted by the plain language of the Purchase Agreement.

The Boehs assert that had the trial court relied on "established dictionaries," it would have found that the "ordinary meaning" of grading "does *not* mean a change in site elevation for the specific purpose of directing water" but would have determined the "ordinary meaning" of grading means "a change in site elevation generally, without any required connection to directing water." The Boehs take issue with the nexus created by the trial court's definition between "grading" and water direction.[5]

"Questions of contract interpretation . . . are questions of law, which we review de novo without a presumption of correctness." *Circle C Constr., LLC v. Nilsen*, 484 S.W.3d 914, 917 (Tenn. 2016). In doing so, "[w]e are guided by well-settled principles and general rules of construction. 'A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties.'" *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013) (quoting *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009)). We initially determine the parties' intent by examining the plain and ordinary meaning of the written words that are "contained within the four corners of the

---

[5] According to the Boehs, the court should have adopted *Webster's New College Dictionary* definition of "grading," which is "to level or slope (ground, a road, etc.) evenly." *Webster's New College Dictionary* 615 (Wiley Publ'g, Inc. 2009). Alternatively, the Boehs point to the Webster's II New Riverside University Dictionary definition of "grading," which is "[t]o smooth or level to a desired or horizontal gradient." *Webster's II New Riverside University Dictionary* 542 (Riverside Publ'g Co. 1984). The Boehs argue that even if the trial court's reference to the Franklin Municipal Code is acceptable, that when compared with the definition in established dictionaries, the meaning becomes ambiguous, necessitating a trial.

contract." *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011). Yet, as our Supreme Court has explained,

> When the parties' contracts are fully integrated, ***general extrinsic evidence of context may be used to interpret the contractual language in line with the parties' intent***, but the parol evidence rule prohibits the use of evidence of pre-contract negotiations in order to vary, contradict, or supplement the contractual terms of a fully integrated agreement.

*Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 697 (Tenn. 2019) (emphasis added). Further, "[c]ommon sense must be applied to each case, rather than any technical rules of construction." *Id.* at 688 (quoting *Barnes v. Black Diamond Coal Co.*, 47 S.W. 498, 499 (Tenn. 1898)).

In relevant part, the Purchase Agreement provides "[a]ny plan or information You may have seen for this community are subject to change," and the Tree Save addendum to the Purchase Agreement provides that "grading . . . shown on the Plat" is "subject to change based on actual site conditions."

The Purchase Agreement is fully integrated,[6] meaning "it is intended to be the complete and exclusive statement of the parties' agreement." *Id.* at 696. Because the Purchase Agreement is fully integrated, extrinsic evidence may provide context, "but it may not be used to vary, contradict, or supplement" the terms of the Purchase Agreement itself. *Id.* at 698.

Thus, the trial court did not err by referencing the Franklin Municipal Code to determine the context in which the term "grading" was used. As such, we affirm the trial court's determination that "grading," as used in the Purchase Agreement, permitted "changes in site elevation for the purpose of directing water."

The foregoing notwithstanding, the Boehs insist that had there not been a breach, there should not have been anything to correct following the closing. The Boehs contend that there is no dispute that at closing, NVR conveyed the Property to the Boehs with the deed, which referenced the Original Plat to describe the Property being conveyed and

---

[6] Section 25 of the Purchase Agreement is titled "Entire Agreement" and states:

This Agreement, together with the Tennessee Addendum to Purchase Agreement, the Affiliated Business Arrangement Disclosure, and all other addenda pertaining thereto are incorporated by reference and constitute the entire and final Agreement. No other prior or contemporaneous agreements, representations, promises or terms (written or oral) are part of this Agreement, but are superseded by this written Agreement. No additions or changes to this Agreement shall be valid or binding unless signed by You and Our authorized officer.

showed that the Property was "wholly outside the flood zone." Yet, because the Property was located inside the flood plain at closing, the Boehs insist that it is undisputable that NVR did not convey "Lot 431 as shown on the Original Plat."

For its part, NVR asserts that the trial court properly dismissed the Boehs' breach of contract claim because the Boehs received exactly what they bargained for—a legal and buildable residential home and that any damage they suffered was cured when the Property was removed from the flood plain.

Finding there was no material breach of contract, the trial court explained, "It is undisputed that [the Boehs] received a buildable lot in Williamson County, wholly outside the 100-year floodplain." Accordingly, the trial court granted NVR summary judgment on the breach of contract claim, concluding that there was "no genuine dispute of material fact remaining for trial on the question of whether NVR breached its agreement with [the Boehs] when it conveyed the property to them."

Importantly, to establish a claim for breach of contract, the Boehs were required to prove: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (quoting *Custom Built Homes v. G.S. Hinsen Co.*, No. 01A01-9511-CV-00513, 1998 WL 960287 (Tenn. Ct. App. Feb. 6, 1998)). Interpretation of a written agreement is a matter of law, not of fact. *APAC-Tennessee, Inc. v. J.M. Humphries Constr. Co.*, 732 S.W.2d 601, 604 (Tenn. Ct. App. 1986) (citations omitted).

The Purchase Agreement included the following provisions: any grading shown on the Original Plat was subject to change; NVR reserved the right "to make changes in the Plans and Specifications for purposes of mechanical installations, building code and site requirements"; and detailed that even after closing, NVR retained the right to enter the Property "for the purpose of making exterior changes to the Lot or to adjacent lots, including but not limited to grading and drainage system changes and the removal or planting of trees." Thus, NVR retained the authority, even after closing, to re-enter the Property to fill, grade and make changes necessary to complete the LOMR process and deliver the Property "wholly outside the flood zone." NVR did just that. Therefore, NVR fulfilled its contractual obligation that the Property be "wholly outside the flood zone."

For the foregoing reasons, NVR was entitled to summary judgment as a matter of law on the breach of contract claim.

### III. TCPA & STRICT LIABILITY

The Boehs contend the trial court erred by summarily dismissing their TCPA claim against NVR. More specifically, they contend the court "misapplied the legal requirements

for TCPA . . . liability by holding that fault on the part of NVR is a pre-requisite to TCPA liability."

For its part, NVR insists dismissal of the TCPA claim was appropriate because it affirmatively negated an essential element required for a TCPA claim. More specifically, it established that "(1) the Property is not in a floodplain, (2) NVR knew nothing about the floodplain until after the closing, and (3) NVR made no deceptive statements regarding the floodplain." For these reasons, NVR contends the Boehs were unable to "put up" proof that NVR engaged in a deceptive act.

The Boehs' TCPA claim is based on subsection 12 of Tennessee Code Annotated § 47-18-104(b), which states that "unfair or deceptive acts or practices" such as "[r]epresenting that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law" constitute an unlawful violation of the Act. The Boehs insist they presented substantial and material evidence to support their claim. Specifically, they assert that prior to signing the Purchase Agreement, NVR's employee, Brittany Walker, represented that the Property was not in the flood plain.[7] They further insist that additional representations that the Property was not in the flood plain were made as part of the Purchase Agreement and the Deed, which detailed that the Boehs were acquiring fee simple rights in the Property as shown on the Original Plat, which depicted the Property as being located outside the flood plain. Accordingly, they complain that the trial court erred by granting summary judgment to NVR.

In support of this argument, the Boehs cite *Ganzevoort v. Russell*, 949 S.W.2d 293 (Tenn. 1997) for the proposition that "actionable fault is not a prerequisite to liability." Essentially, the Boehs argue that liability under the TCPA is not dependent on evidence of knowledge; therefore, NVR may be held liable even though they had no knowledge of the alleged misrepresentations.

Notably, the Tennessee Supreme Court rejected this proposition in *Ganzevoort* by clarifying that "[t]he Act does ***not*** impose strict liability." *Id.* at 299 (emphasis added). In its Order on Petition to Rehear, the Court elaborated:

> The Tennessee Legislature did not define "unfair" and "deceptive" in the Consumer Protection Act. Where a particular act or practice has not been specifically addressed in the statute, the definition of those terms are left to the courts on a case by case basis. *See* Jeffrey L. Reed, *The Tennessee Consumer Protection Act: An Overview*, 58 Tenn. L. Rev. 455, 460 (1991).

---

[7] Section 16 of the Purchase Agreement states that unless they are written into the agreement, oral statements or promises are not enforceable. There were no oral statements or promises written into the agreement, so Ms. Walker's statement is not enforceable.

- 15 -

The conclusion that the same definition does not apply in every case is consistent with the varying provisions of the Act defining unfair and deceptive acts in particular situations. Tenn. Code Ann. § 47-18-104(b)(1–26) and (28–30). A review of these provisions shows that though in most situations actionable fault is not a prerequisite to liability, in others, knowledge is a prerequisite, and in still others, intent to deceive is the standard. Consequently, the petitioner's second contention, that under the Act proof of deception is never dependent upon evidence of intent or knowledge, is contrary to the plain language of the Act.

*Id.* at 300 (footnote omitted).

Further distinguishing *Ganzevoort* from the present case, *Ganzevoort* addressed subsection 27 of § 47-18-104(b) as it applied to real estate brokers. *See id.* at 298–99. The Court explained that the Act neither imposes strict liability nor imposes duties beyond those generally accepted in the business as good practice for real estate brokers. *Id.* at 299. In its Order on Petition to Rehear, the court clarified that the same definition of "unfair" or "deceptive" acts is not applicable to all provisions of the Act. *Id.* at 300.

As the terms "unfair" and "deceptive" are not defined by the TCPA,[8] "the standards to be used in determining whether a representation is 'unfair' or 'deceptive' under the TCPA are legal matters to be decided by the courts." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005) (citations omitted). "However, whether a specific representation in a particular case is 'unfair' or 'deceptive' is a question of fact." *Id.* (citing *Davidson v. Gen. Motors Corp.*, 786 N.E.2d 845, 851 (Mass. App. Ct. 2003)). As a question of fact, our review on appeal is de novo with a presumption of correctness. Tenn. R. App. P. 13(d).

In determining the TCPA's intended meaning, the Act directs courts to look to opinions interpreting a similar provision in the Federal Trade Commission Act. In the 1994 legislation reauthorizing the Federal Trade Commission, Congress stated "that an act or practice should not be deemed unfair 'unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to

---

[8] The Supreme Court has previously explained,

To be considered deceptive, an act is not necessarily required to be knowing or intentional. Negligent misrepresentations may be found to be violations of the Act. A deceptive act or practice is, in essence, "a material representation, practice or omission likely to mislead . . . reasonable consumer[s]" to their detriment.

*Fayne v. Vincent*, 301 S.W.3d 162, 177 (Tenn. 2009) (citations omitted) (quoting *Ganzevoort*, 949 S.W.2d at 299).

competition.'" *Tucker*, 180 S.W.3d at 116–17 (quoting 15 U.S.C. § 45(n)). "To be considered 'substantial,' consumer injury must be more than trivial or speculative." *Id.* at 117 (citing *Tungate v. MacLean-Stevens Studios*, *Inc*., 714 A.2d 792, 797 (Me. 1998); *Legg v. Castruccio*, 642 A.2d 906, 917 (Md. Ct. Spec. App. 1994)). Consumer injury should only be considered substantial if a relatively small harm is inflicted on many consumers "or if a greater harm is inflicted on a relatively small number of consumers." *Id.* (citing *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1365 (11th Cir. 1988)).[9] "The concept of unfairness is even broader than the concept of deceptiveness, and it applies to [various] abusive business practices that are not necessarily deceptive." *Id.* at 116 (citing Jonathan Sheldon & Carolyn L. Carter, *Unfair and Deceptive Acts and Practices* § 4.3.3.1, at 156 (5th ed. 2001)).

Importantly, this court has previously defined a deceptive act or practice as "one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact." *Id.* at 116. Thus, "the essence of deception is misleading consumers by a merchant's statements, silence, or actions." *Id.* (citing Sheldon & Carter, *supra*, § 4.2.3.1, at 118–19)).

Because there are differing standards for each provision of the Act, we look to other cases that define "unfair" or "deceptive" acts within the parameters of § 47-18-104(b)(12), the section cited by the Boehs. In *Roby v. NationStar Mortgage, LLC*, No. W2019-00730-COA-R3-CV, 2020 WL 2315784 (Tenn. Ct. App. May 11, 2020) this court explained that recovery under § 47-18-104(b)(12) requires more "than a disagreement or misunderstanding." *Id.* at *11. Meanwhile, in *Overton v. Westgate Resorts, Ltd., L.P.*, No. E2014-00303-COA-R3-CV, 2015 WL 399218 (Tenn. Ct. App. Jan. 30, 2015) this court found that there had been a violation of § 47-18-104(b)(12) where the plaintiffs demonstrated by clear and convincing evidence that the defendants had engaged in intentional and fraudulent conduct, which amounted to a willful violation of the Act. *Id.* at *7. Based on these cases and *Ganzevoort*, it is apparent that strict liability is not imposed under § 47-18-104(b)(12).

The trial court found that to trigger liability under the TCPA, NVR was required to have acted with some level of fault. The trial court determined there were no facts or

[9] In *Tucker v. Sierra Builders*, 180 S.W.3d 109 (Tenn. Ct. App. 2005), this court further explained:

> Even if an act or practice causes or is likely to cause substantial injury, it will not be considered unfair unless the injury is not reasonably avoidable by consumers themselves. Consumers cannot reasonably avoid injury when a merchant's sales practices unreasonably create or take advantage of an obstacle to the free exercise of consumer decision-making. Practices that unreasonably interfere with consumer decision-making include (1) withholding important information from consumers, (2) overt coercion, or (3) exercising undue influence over a highly susceptible class of consumers.

*Id.* at 117.

allegations to support a claim that NVR acted with any level of fault and that the undisputed facts established that the Boehs neither relied on the Original Plat or any representations made by NVR with respect to the location of the flood plain. We agree.

In his deposition testimony, Mr. Boeh conceded that it was his understanding that NVR was not aware of the flood plain issues on the Property until after closing. Upon learning of the flood plain issues, NVR communicated with the Boehs and began the process of rectifying the issues. Thus, it cannot be said that NVR engaged in unfair or deceptive acts that conferred "rights, remedies or obligations."

For the foregoing reasons, we affirm the trial court's decision to summarily dismiss the Boehs' TCPA claim against NVR.

## IN CONCLUSION

The judgment of the trial court is affirmed in all respects, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Michael and Anna Boeh.

_____
FRANK G. CLEMENT JR., P.J., M.S.